EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mayra I. Vélez López<br>    Peticionaria<br><br>Departamento de Asuntos del Consumidor<br>    Agencia Peticionaria<br><br>v.<br><br>Frances Izquierdo Stella<br>    Recurrida<br><br>Jesús Cales Rivera, et al.<br>    Interventores-Recurridos | Certiorari<br><br>2004 TSPR 92<br><br>161 DPR ____ |

Número del Caso: CC-2004-52

Fecha: 7 de junio de 2004

Tribunal de Circuito de Apelaciones:

                Región Judicial de Ponce

Juez Ponente:

                Hon. José M. Aponte Jiménez

Abogada de la Agencia Peticionaria:

                Lcda. Ilsa I. González Rivera

Abogado de los Interventores-Recurridos:

                Lcdo. Edgardo Cales Rivera

Materia: Revisión Administrativa procedente de la Oficina de Asuntos del Consumidor

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mayra I. Vélez López
    Peticionaria

Departamento de Asuntos del
Consumidor
    Agencia Peticionaria

    v.                        CC-2004-52       Certiorari

Frances Izquierdo Stella
    Recurrida

Jesús Cales Rivera, *et al*.
    Interventores-Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 7 de junio de 2004.

La resolución de este caso requiere que interpretemos el Art. 31(11) de la Ley para Reglamentar el Negocio de Bienes Raíces y la Profesión de Corredor, Vendedor o Empresas de Bienes Raíces en Puerto Rico[1] que prohíbe a todo corredor de bienes raíces retener, o inducir a otra persona a retener, el depósito en una transacción cuando la misma no se lleva a cabo "sin que haya culpa del comprador". Luego de examinar los hechos del caso de autos a la luz de la Ley para Reglamentar el Negocio de Bienes Raíces, *supra*, resolvemos que erró el Tribunal de

---

[1] Ley Núm. 10 de 26 de abril de 1994, 20 L.P.R.A. sec. 3054(11) (en adelante Ley para Reglamentar el Negocio de Bienes Raíces).

Apelaciones al intervenir con la determinación del Departamento de Asuntos del Consumidor mediante la cual se le ordenó a una corredora de bienes raíces devolver al optante el depósito dado como parte de un contrato de opción de compraventa de un inmueble, en vista de que el financiamiento del mismo fue denegado por la institución bancaria. Veamos.

I

Los esposos Jesús Cales Rivera y Elsie Camacho Pérez (en adelante matrimonio Cales Camacho) suscribieron un contrato de corretaje de bienes raíces con la Sra. Frances Izquierdo Stella para que ésta procurara la venta de un apartamento residencial de la pareja. Posteriormente, y como producto de las gestiones de la señora Izquierdo Stella, el matrimonio Cales Camacho otorgó un "Contrato de Opción de Compra" junto a la Sra. Mayra I. Vélez López y el Sr. José Anadón.

En el referido contrato de opción se acordó que el precio de venta sería sesenta y siete mil dólares ($67,000). El día en que se firmó el contrato de opción, se pagaron dos mil dólares ($2,000) que serían acreditados al precio de venta y los cuales retendría la Sra. Izquierdo Stella en una cuenta de reserva hasta que se firmara la escritura de compraventa. Este pago no devengaría interés. El balance de sesenta y cinco mil dólares ($65,000) se abonaría al firmarse la escritura de compraventa. Se expresó, además, que el matrimonio Cales Camacho pagaría la

comisión de corretaje del uno por ciento (1%) del precio total de venta a la Sra. Izquierdo Stella en la fecha en que se firmara dicha escritura. Los optantes tendrían tres (3) meses desde la firma de este contrato para ejercer su derecho de opción de compra, para lo cual tendrían que enviar una notificación por correo certificado al matrimonio Cales Camacho antes del vencimiento de dicho plazo. En cuanto al "no ejercicio de la opción de compra", se estipuló que:

> 7. El no ejercer el derecho de opción de compra dentro del término y en la forma que aquí se establece, dará derecho a retener la cantidad pagada por el (los) OPTANTE(S) por esta opción.

El encabezamiento de este contrato contiene la dirección, teléfono de oficina y nombre de la corredora de bienes raíces, Sra. Izquierdo Stella, quien redactó el mismo.

Así las cosas, la señora Vélez López y el señor Anadón comenzaron a gestionar el financiamiento del referido apartamento. No obstante, un mes luego de otorgado el contrato de opción, la institución bancaria a la que acudieron denegó su solicitud de préstamo hipotecario por "empírica baja".[2] Consiguientemente, aproximadamente dos (2) meses antes de vencer el plazo para ejercer la opción,

---

[2] La "empírica" es un método de evaluación de crédito que determina con qué probabilidad el deudor pagará sus facturas. Se le asigna un número al historial de crédito del deudor que se determina mediante el estudio de factores tales como, atrasados en los pagos, crédito disponible, tiempo que lleva residiendo en su casa actual, historial de empleo y quiebras.
*Véase*, http://www.femortgage.com/spanish/fico.htm.

la señora Vélez López y el señor Anadón le solicitaron a la señora Izquierdo Stella la devolución de los dos mil dólares ($2,000) adelantados.  Por su parte, Izquierdo Stella contestó que la parte concedente, matrimonio Cales Camacho, alegaba que dicha cantidad le correspondía conforme a lo estipulado en la cláusula siete (7) del contrato de opción de compra, por lo que la retendría hasta que ambas partes llegasen a un acuerdo.

En vista de lo anterior, la señora Vélez López y el señor Anadón presentaron una querella ante el Departamento de Asuntos del Consumidor (en adelante DACO) contra la señora Izquierdo Stella.  El matrimonio Cales Camacho compareció ante DACO mediante solicitud de intervención. Alegó, en resumen, que tenía derecho a retener el depósito conforme los términos del contrato porque los optantes no ejercieron oportunamente su derecho de opción de compra. El foro administrativo declaró con lugar la solicitud de intervención.

Celebrada la vista administrativa, DACO concluyó que el contrato de opción había sido redactado por la señora Izquierdo Stella y le ordenó a ésta devolver el depósito reclamado por Vélez López y Anadón.  Fundamentó su determinación en el inciso 11 del artículo 31 de la Ley para Reglamentar el Negocio de Bienes Raíces, *supra*, que prohíbe a todo corredor de bienes raíces retener, o inducir a otra persona a retener, el depósito en una transacción que no se lleva a cabo sin que haya mediado culpa del

comprador.  Se expresó en la Resolución que, de acuerdo a la Ley para Reglamentar el Negocio de Bienes Raíces, está prohibido retener el "depósito de contrato de opción de compra o de compraventa realizado a través de corredor de bienes raíces cuando no media culpa del comprador".

De este dictamen, el matrimonio Cales Camacho recurrió al Tribunal de Apelaciones, el cual revocó la determinación de DACO.  El foro apelativo intermedio resolvió que del contrato de opción no surgía limitación alguna en cuanto al derecho del matrimonio Cales Camacho a retener los dos mil dólares ($2,000) adelantados por los optantes en caso de no ejercerse la opción.  Determinó asimismo, que la negativa del banco a conceder crédito a la señora Vélez López y al señor Anadón no se trataba de un suceso imprevisto, o que previsto fuese inevitable, de manera que los optantes quedaran liberados de su obligación contractual.  Conforme a esto, se concluyó que la determinación de DACO basada meramente en la obligación del corredor de bienes raíces, evade la cuestión principal levantada en este caso en cuanto a que los vendedores no están obligados a devolver el depósito a los "compradores" porque así expresamente se pactó en el contrato de opción sin reserva ni limitación de clase alguna.

Inconformes, la señora Vélez López y el señor Anadón recurrieron ante nos. Vista su solicitud de *certiorari*, le ordenamos al matrimonio Cales Camacho a mostrar causa por la cual no debíamos revocar la Sentencia del Tribunal de

Apelaciones en el presente caso. En su comparecencia, Cales Camacho reitera los argumentos que presentó ante el foro administrativo. Sostiene además, que en todo caso, el Art. 31(11) de la Ley para Reglamentar el Negocio de Bienes Raíces no aplica debido a que el adelanto de dos mil dólares ($2,000) no se trata de un "depósito" sino de una prima que corresponde a los concedentes al no ejercitarse la opción, como ocurrió en este caso. Con el beneficio de su comparecencia, procedemos a resolver la controversia planteada.

A la luz de los hechos del presente caso, debemos determinar, en síntesis, si el (la) corredor de bienes raíces está obligado a devolver a los optantes el depósito que le fue entregado por concepto de un contrato de opción de compra. Veamos.

II

Por la naturaleza de las funciones de los corredores de bienes raíces y la importancia que tiene para la economía la compra y venta de inmuebles, se dispuso un ordenamiento especial para reglamentar el negocio de bienes raíces relacionado a propiedades en y fuera de Puerto Rico. Exposición de Motivos de la Ley para Reglamentar el Negocio de Bienes Raíces, *supra*, Leyes de Puerto Rico, 1994, pág. 43-44; Leyes de Puerto Rico, 1998, pág. 1285; Leyes de Puerto Rico, 1999, pág. 672-673. La Ley para Reglamentar el Negocio de Bienes Raíces de 1994, *supra*, agrupa todas las disposiciones legales pertinentes al negocio de bienes

raíces existentes hasta entonces y dispone un nuevo y más estricto cuerpo reglamentario con el fin de beneficiar a los consumidores y a los vendedores, corredores o empresas de bienes raíces. Leyes de Puerto Rico, 1994, pág. 43-44; Leyes de Puerto Rico, 1998, pág. 1285. La misma crea la Junta de Corredores, Vendedores y Empresas de Bienes Raíces de Puerto Rico; dispone los requisitos para obtener la licencia para ejercer como vendedor, corredor y empresa de bienes raíces; y provee para la expedición, renovación y revocación de licencia, entre otros asuntos. *Véase*, 20 L.P.R.A. secs. 3026-3042.

La ley faculta al Departamento de Asuntos del Consumidor para supervisar el negocio de bienes raíces en Puerto Rico y la venta en Puerto Rico de bienes raíces ubicados fuera de Puerto Rico.[3] 20 L.P.R.A. secs. 3046. Con ese fin, DACO quedó facultado para, entre otras cosas, investigar violaciones a la ley, considerar y adjudicar querellas y orientar al público sobre los remedios y las protecciones legales disponibles. *Id.* En particular, DACO está facultado al amparo de la Ley para Reglamentar el Negocio de Bienes Raíces, *supra*, a investigar y adjudicar querellas relacionadas a la comisión por parte de los corredores, vendedores o empresas de bienes raíces de actos o prácticas proscritas. *Id.*; 20 L.P.R.A. sec. 3054.

---

[3] En cumplimiento con esta responsabilidad, DACO aprobó el Reglamento Núm. 6629 de 6 de junio de 2003 conocido como Reglamento de Venta de Propiedades Localizadas Dentro y Fuera de Puerto Rico.

Entre los actos o prácticas prohibidas por la Ley para Reglamentar el Negocio de Bienes Raíces, *supra*, se dispone que:

> **Se prohíbe a toda persona sujeta a las disposiciones de [esta ley] a incurrir, o inducir a otra persona a incurrir**, en cualquiera de los actos o prácticas que se enumeran a continuación:
>
> (1)
>
> (2)
>
> ...
>
> (11) **Retener cualquier depósito cuando no se lleve a cabo la transacción o gestión objeto de dicho depósito sin que haya culpa del comprador.**
> ...
>
> Art. 31 (11) de la Ley para Reglamentar el Negocio de Bienes Raíces, *supra*, 20 L.P.R.A. sec. 2054(11). (Énfasis suplido).

Este artículo le prohíbe a todo corredor, vendedor o empresa de bienes raíces retener, o inducir a cualquier persona a retener, cualquier depósito cuando la transacción de bienes raíces no se verifica por razones que no pueden reputarse constitutivas de culpa del comprador. La violación de este artículo podría penalizarse con la imposición de una multa administrativa hasta un máximo de diez mil dólares ($10,000) en adición a la denegación de la licencia de corredor de bienes raíces. 20 L.P.R.A. secs. 3042 y 3058.

Conforme se define en la ley, "corredor de bienes raíces" se refiere a la persona natural que posee una licencia válida para ejercer la profesión de corredor de bienes raíces y quien, mediante pago o promesa de pago de

cualquier compensación mutua y previamente convenida, actúa como intermediario entre las partes para llevar a cabo una transacción de compraventa, promesa de venta, opción de compra o venta, entre otras.   20 L.P.R.A. sec. 3025(a). "Depósito", a su vez, significa:

> [L]a suma de dinero que un comprador entrega a un corredor, vendedor o empresa de bienes raíces antes de efectuarse una transacción de bienes raíces, relacionada con un bien inmueble localizado en o fuera de Puerto Rico a los fines de que éste inicie las diligencias necesarias para que dicha transacción se realice.   20 L.P.R.A. sec. 3025(h).

Transacción de bienes raíces, por su parte, se define como cualquier contrato de compraventa, promesa de venta, opción de compra o venta, entre otros, donde sirva de intermediario un corredor, vendedor o empresa de bienes raíces.   20 L.P.R.A. sec. 3025(i).

Además, la ley ordena a todo corredor o empresa de bienes raíces mantener una cuenta especial separada en la que se depositarán todos los "prontos pagos, depósitos de buena fe u otros depósitos en fideicomisos" recibidos de parte de cualquier cliente o entidad, hasta que se realice o termine la transacción para la cual fueron depositados. 20 L.P.R.A. sec. 3044.

A la luz de este ordenamiento jurídico, DACO determinó que la Ley para Reglamentar el Negocio de Bienes Raíces, *supra*, establece que no podrá retenerse depósito de un contrato de opción de compra o de compraventa realizado a través de un corredor de bienes raíces si no media culpa del comprador en la no realización de la compraventa.   De

esa manera, se determinó que la diligencia del comprador para gestionar el financiamiento necesario para la compra del inmueble constituye justa causa conforme al Art. 31(11) de la Ley para Reglamentar el Negocio de Bienes Raíces, *supra*, de modo que procede la devolución del depósito. El Tribunal de Apelaciones, por el contrario, sostuvo la teoría del matrimonio Cales Camacho en cuanto a que a éste le corresponde retener el depósito dado por los optantes en el presente caso de acuerdo al principio de la libertad contractual. Veamos.

                                III

A la luz de nuestro ordenamiento civilista, las partes son libres para acordar y contratar todo lo que a bien les parezca, siempre que ello no sea contrario a la ley, la moral o el orden público. Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372. Estos criterios que integran el principio de libertad contractual son la única limitación que existe a la voluntad de las partes en cuanto a la naturaleza y clase de pactos, cláusulas y condiciones que pueden establecer. Irizarry López v. García Cámara, res. el 27 de noviembre de 2001, 2001 TSPR 161; Unisys v. Ramallo Bros., 128 D.P.R. 842 (1991). "La violación de uno de estos principios podría producir la nulidad absoluta de lo pactado." Unisys v. Ramallo Brothers., a la pág. 851; Mun. de Ponce v. Autoridad de Carreteras, res. el 29 de diciembre de 2000, 2000 TSPR 194. Cónsono con la autonomía de la voluntad contractual, hemos resuelto que los

contratos son ley entre las partes, las cuales tienen que acatar lo estipulado, a menos que sea contrario a la ley, la moral o el orden público. *Id.*; Trinidad v. Chade, res. el 18 de enero de 2001, 2001 TSPR 7; Banco Bilbao Vizcaya v. Mun. Vega Baja, res. el 27 de abril de 2001, 2001 TSPR 60. Asimismo, una vez un contrato queda perfeccionado –al concurrir el consentimiento de las partes y el objeto y la causa del contrato– las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven del mismo, conforme a la buena fe, al uso y a la ley. Arts. 1210, 1230 y 1213 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 3375, 3391 y 3451.

En el caso de autos, en el contrato de opción de compra que otorgaron la señora Vélez López y el señor Anadón conjuntamente con el matrimonio Cales Camacho intervino una corredora de bienes raíces. La corredora Stella Izquierdo fue quien gestionó la firma del contrato de opción, redactó el mismo y retuvo el depósito de dos mil dólares ($2,000) adelantado por los optantes. Se trata de un contrato de opción en el que "sirvió de intermediario" un corredor de bienes raíces. 20 L.P.R.A. sec. 3025(i) (definición de transacción de bienes raíces). Por estas circunstancias es que precisamente aplica al caso de autos la Ley para Reglamentar el Negocio de Bienes Raíces, *supra*. No hay en este caso controversia en cuanto a que estamos ante una transacción de bienes raíces según lo define la ley.

En dicho contrato de opción se estipuló la retención de referido depósito en caso de que los optantes no ejercieran la opción según estipulado. A pesar de que la Ley para Reglamentar el Negocio de Bienes Raíces, *supra*, prohíbe expresamente la retención por parte del corredor de bienes raíces, o el hecho de que el corredor induzca a otra persona a retener, cualquier depósito dado como parte de una transacción de bienes raíces cuando el negocio proyectado no se realiza *sin que haya mediado culpa del comprador*, la corredora de bienes raíces señora Stella Izquierdo redactó la cláusula en controversia de manera *incondicional*. Este pacto de retención de depósito incondicional es contrario a la ley y, por consiguiente, nulo.

Valga aclarar, que el pacto para retener el depósito dado en casos como el de autos, en los que media un corredor de bienes raíces, no es contrario a la ley *per se*. Esto puede estipularse siempre que se provea que para ello debe mediar culpa del comprador en la no realización de la transacción. No obstante, en el presente caso la cláusula en cuestión le reconoce el derecho al concedente a retener el depósito <u>en todo caso</u>, independientemente de las razones por las cuales no se llegó a concretizar la compraventa. No es necesario adjudicar si efectivamente en este caso medió o no culpa del comprador en el fracaso de la compraventa proyectada en vista de que la controversia real

en este caso despacha ese planteamiento.[4]  Al ser nula por contradecir la ley, la cláusula número siete (7) del contrato de opción no tiene efecto jurídico alguno.  Por consiguiente, los concedentes matrimonio Cales Camacho no tienen derecho a retener el depositó dado por los optantes pues, para todos los efectos, ello no fue estipulado en el contrato de opción.

Lo anterior también atiende el argumento del matrimonio Cales Camacho en cuanto a que los dos mil dólares ($2,000) adelantados no se tratan de un "depósito" sino de una prima pagada por los optantes a cambio del derecho de opción.  Nuevamente, la Ley para Reglamentar el Negocio de Bienes Raíces particularmente dispone que al realizarse una transacción a través de un corredor, vendedor o compañía de bienes raíces, no está permitido retener "la suma de dinero que un comprador entrega al

---

[4] Cabe señalar, sin embargo, que en ocasión de regular los contratos de opción entre los consumidores y los urbanizadores o constructores de viviendas privadas, la Asamblea Legislativa de Puerto Rico dispuso que el optante tiene el derecho de resolver el contrato de opción en caso de que la institución hipotecaria deniegue el financiamiento de la vivienda objeto del contrato.  Ley Núm. 130 de 13 de junio de 1967, según enmendada, 17 L.P.R.A. sec. 510(f)(6).  *Además*, Sección 11 y 12 del Reglamento 2268 sobre el Negocio de la Construcción de Viviendas Privadas en Puerto Rico de 16 de septiembre de 1977.  En ese caso, a pesar del incumplimiento por parte del comprador, el urbanizador o constructor no podría retener el depósito adelantado para la opción.  Sí podrá deducir una cantidad máxima de cincuenta dólares ($50) por concepto de gastos. *Id*.  En cualquier otro caso, deberá probar los daños sufridos.  *Id*.  De esta forma, se reconoce la importancia de proteger al consumidor en la adquisición de viviendas mediante los contratos de opción en los que medien entidades corporativas o terceros que no sean individuos privados que gestionan por sí mismos la venta de sus propiedades.

corredor, vendedor o empresa de bienes raíces antes de efectuarse una transacción de bienes raíces, relacionada con un bien inmueble localizado en o fuera de Puerto Rico a los fines de que éste inicie las diligencias necesarias para que dicha transacción se realice". 20 L.P.R.A. sec. 3025(h) (definición de depósito). Es decir, "depósito" incluye cualquier suma de dinero que se entregue al corredor antes de efectuarse la transacción de bienes raíces "a los fines de que éste inicie las diligencias necesarias para que dicha transacción se realice". Por lo tanto, la prohibición alcanza, de igual forma, el pacto para la retención de cualquier prima –"deposito"– si la transacción no se realiza sin que haya mediado culpa del comprador.

Al quedar esta cláusula sin efecto no puede sostenerse que existe entre las partes un pacto de pago de prima a cambio del derecho de opción. La obligación de pagar una prima en los contratos de opción no se presume. José Ángel Torres Lana, *Contrato de Derecho de Opción*, 2da. ed., Ed. Trivium, Madrid, 1987, pág. 154. La prima tiene que pactarse expresamente en el contrato de opción. *Id*.

Resolver de otra forma sería contrario al propósito y espíritu de Ley para Reglamentar el Negocio de Bienes Raíces, *supra*, la cual se aprobó para beneficiar a los consumidores en la compraventa de bienes inmuebles cuando intervenga un corredor, vendedor o empresas de bienes raíces. De esta manera se da cumplimiento al mandato de

interpretación liberal a favor del consumidor que dispone el Reglamento Núm. 6629, *supra*, que adoptó DACO para instrumentar la Ley para Reglamentar el Negocio de Bienes Raíces, *supra*.[5] Regla 2 del Reglamento Núm. 6629 de 6 de junio de 2003, *supra*. A esos efectos, durante el debate en la Cámara de Representantes para la aprobación de esta ley se recalcó la naturaleza delicada de los intereses de los consumidores involucrados en la compraventa de bienes inmuebles en Puerto Rico, al expresarse que:

> [L]a importancia y delicadeza [del ejercicio de la profesión de corredores, vendedores o empresas de bienes] es que, a diferencia de otros, aquí estamos hablando de los ahorros de tal vez toda una vida de una familia, donde nuestras familias ponen sus economías en su casita, en su finca, su propiedad. Los bienes inmuebles, probablemente en la mayoría de las familias puertorriqueñas, son el único activo que tienen nuestras familias, especialmente de clase media y clase humilde. Por esa razón el reglamentar y dirigir una profesión que tiene en sus manos tan delicado asunto, no es sencillo. Diario de Sesiones de la Cámara de Representantes de Puerto Rico, Debate P. de la S. 300 de 11 de abril de 1994, pág. 169-70.

Por último, debemos resaltar la particularidad de este caso en cuanto al hecho de que entre las partes contratantes medió un corredor de bienes raíces que redactó el contrato de opción y retuvo el depósito dado por los optantes y quien, además, debe observar y atenerse a lo dispuesto en la Ley para Reglamentar el Negocio de Bienes

---

[5] Este reglamento también dispone una interpretación liberal a favor del consumidor en armonía con la Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, según enmendada, 3 L.P.R.A. sec. 341 *et seq*.

Raíces, *supra*.  Distinto del caso en que la transacción no se realiza a través de un corredor de bienes raíces sino entre partes privadas directamente. En esas circunstancias, es decir, cuando es el propio dueño el que gestiona la venta de su propiedad, es completamente válido el que las partes estipulen que no se devolverá el dinero de la opción, independientemente de cuál sea la razón por la cual no se pueda dar el negocio.  Sin embargo, esa no es la situación que está ante nuestra consideración.

IV

Por los fundamentos que anteceden, se expide el auto de *certiorari* solicitado y se revoca la Sentencia del Tribunal de Apelaciones.  Se deja en vigor el dictamen del Departamento de Asuntos del Consumidor en el caso de autos.


FEDERICO HERNÁNDEZ DENTON
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mayra I. Vélez López
  Peticionaria

Departamento de Asuntos del
Consumidor
  Agencia Peticionaria

    v.                              CC-2004-52        Certiorari
Frances Izquierdo Stella
  Recurrida

Jesús Cales Rivera, *et al*.
  Interventores-Recurridos


SENTENCIA

San Juan, Puerto Rico, a 7 de junio de 2004.

Por los fundamentos expuestos anteriormente, los cuales se hacen formar parte integral de la presente, se expide el auto de *certiorari* solicitado y se revoca la Sentencia del Tribunal de Apelaciones. Se deja en vigor el dictamen del Departamento de Asuntos del Consumidor en el caso de autos.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disintió sin opinión escrita.


                    Patricia Otón Olivieri
                 Secretaria del Tribunal Supremo.