

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pedro Matos Lorenzo, Antonia González García<br><br>    Demandantes  - Recurridos<br><br>v.<br><br>Carmelo Rivera Tirado, Olga Freytes Borrero y la Sociedad Legal de Gananciales por ellos compuesta; Amerilis D. Navedo Dávila<br><br>    Demandados  - Peticionarios | Certiora     ri<br><br><br>2011 TSPR 69<br><br><br>181 DPR ___ |

Número del Caso: CC       - 2010 - 256

Fecha: 11 de mayo de 2011

Tribunal de Apelaciones:

        Región Judicial de Bayamón y San Juan

Jueza Ponente:

        Hon. Emmalind García García

Abogada de la Parte Peticionaria:

        Lcda. Marisella Guzmán Delgado

Abogada de la Parte Recurrida:


        Lcda. Sharon M. Hernández López

Materia:      Incumplimiento de Contrato

Este documento constituye un documento oficial del Tribunal Supremo que está   sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pedro Matos Lorenzo, Antonia González García<br><br>    Demandantes-Recurridos<br><br>        v.<br><br>Carmelo Rivera Tirado, Olga Freytes Borrero y la Sociedad Legal de Gananciales por ellos compuesta; Amerilis D. Navedo Dávila<br><br>    Demandados-Peticionarios | CC-2010-256 |

SENTENCIA

San Juan, Puerto Rico, a 11 de mayo de 2011

Atendido el recurso de *certiorari*, se expide el auto. Asimismo, se dicta sentencia revocando el dictamen emitido por el Tribunal de Apelaciones y reinstalando aquélla emitida por el Tribunal de Primera Instancia.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emite Opinión de conformidad a la que se une el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta. El Juez Asociado señor Martínez Torres concurre con el resultado sin opinión escrita. La Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García disienten sin opinión escrita. El Juez Asociado señor Kolthoff Caraballo no intervino.

                                        Aida Ileana Oquendo Graulau
                                        Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pedro Matos Lorenzo<br>Antonia González García<br><br>    Demandantes-Recurridos<br><br>        v.<br><br>Carmelo Rivera Tirado, Olga<br>Freytes Borrero y la Sociedad<br>Legal de Gananciales por<br>ellos compuesta; Amerilis D.<br>Navedo Dávila<br><br>    Demandados-Peticionarios | CC-2010-256 |

Opinión de conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se une el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta

San Juan, Puerto Rico, a 11 de mayo de 2011

El recurso de autos nos permite expandir nuestros pronunciamientos respecto a la figura del contrato de opción. En particular, hoy examinamos si las partes del contrato de opción pueden establecer en qué *forma* se ejercerá el derecho de opción. Siguiendo el principio de la autonomía de la voluntad contractual, estimo que los contratantes pueden acordar, además del plazo en el cual se podrá ejercer la opción, la forma en que deberá ejercerse; apartándose de la figura tradicional que sólo requiere la mera declaración de la voluntad para el efectivo ejercicio de la opción.

I.

El 21 de marzo de 2006, los señores Pedro Matos Lorenzo y Carmelo Rivera Tirado suscribieron un *Contrato de Opción a Compra* sobre una propiedad comercial, fijando el precio de venta en $130,000.00. Mediante dicho contrato el Sr. Rivera Tirado concedió al Sr. Matos Lorenzo el derecho de opción por un término de treinta días, es decir, hasta el 20 de abril. Este último pagó una prima de $3,000.00, los cuales serían restados al precio de venta una vez se ejercitara el derecho de opción. Las cláusulas y condiciones acordadas por las partes, que generan la controversia que hoy atendemos, disponen:

> PRIMERA: Que LA PARTE VENDEDORA se obliga a darle la primera opción de la propiedad descrita . . ., estipulándose el precio de venta en la cantidad de [$130,000.00].
> . . . .
> TERCERA: Que las partes acuerdan que la cantidad de [$130,000.00], será pagada de la siguiente manera: en el día de hoy se hace entrega de la cantidad de [$3,000.00] como opción, y el remanente de [$127,000.00] se pagarán en o antes de treinta (30) días a partir del día de hoy.
> . . . .
> QUINTA: En caso de incumplimiento o que no se puedan firmar las debidas escrituras, por causa o negligencia de LA PARTE OPTANTE, éstos perderán la opción entregada en el día de hoy. En caso de que LA PARTE VENDEDORA se viera imposibilitada de firmar la escritura, viene obligada la parte vendedora a devolver la opción entregada a LA PARTE OPTANTE.
> SEXTA: De vencerse el término de esta opción y no firmarse la escritura, este contrato quedará nulo y LA PARTE VENDEDORA queda en libertad de vender la propiedad a otro posible comprador.

Tras firmar el contrato, el Sr. Matos Lorenzo y su esposa, la señora Antonia González García, iniciaron

gestiones en una institución bancaria para obtener el financiamiento de la compraventa. Aunque la referida institución aprobó la solicitud del préstamo el 5 de abril de 2006, su tramitación se extendió por varias semanas. Finalmente, el banco notificó a ambas partes que el cierre de la compraventa y la concesión del préstamo se realizarían el 22 de abril de 2006. No obstante, el Sr. Rivera Tirado (optatario-vendedor) no se presentó a efectuar la transacción. En cambio, el 3 de mayo de 2006, éste vendió la propiedad a un tercero: la señora Amérilis Navedo Dávila.

Así las cosas, el Sr. Matos Lorenzo y la Sra. González García, junto a su sociedad legal de gananciales, presentaron ante el Tribunal de Primera Instancia una demanda sobre incumplimiento de contrato y daños y perjuicios contra el Sr. Rivera Tirado y la señora Olga Freytes Borrero, así como la sociedad legal de gananciales compuesta por ellos. En síntesis, la parte demandante adujo que tras suscribir un contrato de opción de compra con el demandado, antes de vencer el plazo acordado en la opción, le notificó que deseaba comprar la propiedad. Asimismo alegó que los demandados conocían de sus gestiones para obtener el financiamiento de la compraventa y que, tanto el banco como los demandantes, le notificaron la aprobación del préstamo el 5 de abril de 2006.

Por otro lado, los demandantes sostuvieron que mientras tramitaban el préstamo con el banco, éste le

informó a los demandados que la institución tendría que retener cierta cantidad del precio de compraventa a los fines de saldar una deuda contributiva. Ello provocó, según se alegó en la demanda, que los demandados expresaran que preferían vender la propiedad a otra persona que hiciera el pago en efectivo.

Tras celebrar un juicio en su fondo, el Tribunal de Primera Instancia emitió sentencia desestimando la acción presentada. Determinó que cuando venció el plazo de treinta días concedido en el contrato de opción, el 20 de abril de 2006, los demandantes no estaban listos o dispuestos para llevar a cabo la compraventa, ni habían acordado con los demandados una extensión al contrato de opción. Igualmente determinó que al 20 de abril, la institución financiera aún no había recibido varios documentos indispensables para otorgar el préstamo. Por todo ello, el foro primario estimó que los demandados podían oponerse a la celebración de la compraventa y podían vender su propiedad a cualquier otro comprador, como en efecto lo hicieron el 3 de mayo de 2006.

De la referida determinación los demandantes acudieron al Tribunal de Apelaciones. Allí solicitaron la revocación de la sentencia del foro primario ya que, según alegaron, erró al "concluir que el perfeccionamiento de un contrato de opción de compraventa está sujeto al otorgamiento del contrato de compraventa y no a la afirmación por parte del optante de que se perfeccione el contrato de opción de

compraventa". El foro apelativo intermedio revocó la sentencia recurrida y devolvió el caso al Tribunal de Primera Instancia. Aquél concluyó que, dejando a un lado el asunto sobre si el contrato de compraventa se perfeccionó dentro del plazo, era necesario que el foro primario adjudicara si los demandantes habían ejercido su derecho de opción dentro del término de treinta días que le fuera concedido en virtud del contrato de opción.

Siguiendo el mandato del Tribunal de Apelaciones, y tras brindar a las partes la oportunidad de presentar evidencia adicional, el Tribunal de Primera Instancia emitió una nueva sentencia declarando sin lugar la demanda. En su dictamen, el cual mantuvo todas las determinaciones de la primera sentencia, aclaró que los demandantes no ejercieron su derecho de opción mediante actos afirmativos dentro del término pactado. La sentencia se notificó el 30 de julio de 2009.

Inconformes aún, el 28 de agosto de 2009, los demandantes presentaron nuevamente un recurso de apelación ante el Tribunal de Apelaciones, en el cual reiteraron el error señalado en la apelación original y adujeron haber manifestado su intención de efectuar la compraventa dentro del plazo concedido. Por su parte, los demandados se opusieron al recurso y alegaron que los demandantes no realizaron actos afirmativos ni ejercieron su derecho de opción de acuerdo a los términos del contrato.

Atendidos los argumentos de la partes, el Tribunal de Apelaciones "modificó"[1] el dictamen recurrido mediante sentencia notificada el 25 de febrero de 2010. Éste expresó que el derecho de opción se ejerce con la simple manifestación por el optante de su intención de perfeccionar el contrato de compraventa, por lo cual es innecesario que la transacción definitiva se consuma dentro del plazo concedido para ejercer la opción. Por ello, y por entender que los demandantes sí habían comunicado a los demandados su interés de adquirir la propiedad objeto de la opción dentro de los treinta días concedidos en el contrato, y que éstos conocían de sus gestiones para obtener el financiamiento de la compraventa, el foro apelativo intermedio concluyó que los demandantes habían ejercido su derecho de opción a tiempo y los demandados habían violado el contrato de opción. Cónsono con lo anterior, el tribunal devolvió el caso al foro primario para que éste fijara los daños sufridos por los demandantes ante el incumplimiento contractual de los demandados.

El 26 de marzo de 2010, acudió ante esta Curia la parte demandada mediante recurso de *certiorari*. Allí alegó que no incumplió el contrato de opción ya que mantuvo la propiedad fuera del mercado por un término de treinta días y no fue hasta vencido dicho plazo, sin que la parte

---

[1] Aun cuando la sentencia del foro apelativo intermedio dispone que modifica la sentencia recurrida, al acoger la causa de acción que el foro primario había desestimado, el Tribunal de Apelaciones realmente revocó la sentencia dictada por el Tribunal de Primera Instancia.

recurrida ejerciera su derecho de opción según fuera pactado, cuando entonces decidió vender el inmueble a un tercero. Añadió que "estamos ante un contrato de opción de compra con unas cláusulas restrictivas que establecen la forma en que se puede ejercitar la opción". Petición de *Certiorari*, pág. 9. De otra parte, los peticionarios sostienen que los recurridos no realizaron actos afirmativos para ejercer su derecho de opción y que el Tribunal de Apelaciones erró al intervenir con las determinaciones de hechos del Tribunal de Primera Instancia.

Visto el recurso, el 15 de octubre de 2010, le concedimos a la parte recurrida un término para que mostrara causa por la cual no debíamos expedir el auto solicitado y revocar la sentencia emitida por el Tribunal de Apelaciones. El 9 de noviembre de 2010, la parte recurrida presentó su oposición. Con el beneficio de la comparecencia de las partes, estamos listos para resolver.

II.

A.

Los contornos del contrato de opción en nuestro ordenamiento jurídico han sido delineados por la jurisprudencia, debido a que en el Código Civil no existen normas al respecto. Ante tal omisión, hemos definido el contrato de opción como "el convenio por el cual una parte (llamada concedente, promitente u optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas

condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal". *P.D.C.M. Assoc. v. Najul Bez*, 174 D.P.R. 716, 724 (2008), citando a *Mayagüez Hilton Corp. v. Betancourt,* 156 D.P.R. 234, 246 (2002); *S.L.G. Irizarry v. S.L.G. García*, 155 D.P.R. 713, 722 (2001); *Atocha Thom McAn, Inc. v. Registrador,* 123 D.P.R. 571, 583 (1989). Esta definición contiene los elementos esenciales del contrato de opción. *Mayagüez Hilton Corp. v. Betancourt*, *supra*, pág. 246. *Véase también* J. Castán Tobeñas, *Derecho Civil Español, Común y Foral,* Madrid, Ed. Reus, 15$^{ta}$ ed., 1993, Tomo IV, pág. 50.

El referido contrato otorga al optante la facultad de determinar, dentro del plazo concedido, si perfecciona el contrato definitivo, es decir, el contrato por el cual optó. Por ello, hemos acogido las expresiones del tratadista Puig Brutau a los efectos de que "no se opta por optar, sino que la opción es la posibilidad de perfeccionar un contrato previamente delimitado". J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1982, Tomo II, Vol. 2, pág. 50. Asimismo, el optatario viene obligado a no frustrar la facultad que le asiste al optante mientras el plazo para ejercer el derecho de opción está vigente. *Mayagüez Hilton Corp. v. Betancourt*, *supra*, pág. 250; Castán Tobeñas, *op. cit.*, págs. 54-55. Si se tratase de una opción de compraventa, ello significaría cuidar la

propiedad y mantenerla fuera del mercado para que ningún tercero pueda adquirirla.

Como norma general, el optante puede ejercer su derecho de opción simplemente notificando al optatario su voluntad de perfeccionar el convenio por el cual optó. *Mayagüez Hilton Corp. v. Betancourt*, *supra*, pág. 246. *Véase además*, Puig Brutau, *op. cit.*, pág. 57 ("La declaración del optante tiene el carácter unilateral y recepticia, no sujeta a forma expresa, pero tendrá que constar de manera fehaciente."). No obstante, dicho derecho queda extinguido con su renuncia o si transcurre el plazo concedido sin que el optante ejerza la opción —se estima entonces caducado. *Mayagüez Hilton Corp. v. Betancourt*, *supra*, pág. 249.

De otra parte, si la opción se ejerce dentro del plazo acordado, el contrato de opción queda extinguido y a su vez se perfecciona el contrato aceptado según haya sido previamente delimitado. *Id.* Desde entonces, y no antes, las partes vienen obligadas a satisfacer sus respectivas prestaciones bajo el contrato definitivo. *Véase*, *Rosa Valentín v. Vázquez Lozada*, 103 D.P.R. 796, 809-10 (1975), citando la sentencia del Tribunal Supremo de España de 23 de marzo de 1945 ("las recíprocas obligaciones . . ., sobre esta base, han de exigirse después, pero no precisamente en el plazo establecido que atañe sólo a la necesidad de formalizar la aceptación en su transcurso.").

B.

Ahora bien, hemos reconocido que las normas generales sobre las obligaciones y los contratos son aplicables al contrato de opción. *Rosa Valentín v. Vázquez Lozada*, *supra*, pág. 804; *Pérez v. Sampedro*, 86 D.P.R. 526, 529 (1962). *Véase además* Puig Brutau, *op. cit.*, pág. 49. Por ello, rige aquí también el principio de libertad de contratación o autonomía de la voluntad contractual, bajo el cual las partes pueden pactar las cláusulas y condiciones que estimen convenientes mientras no contravengan las leyes, la moral ni el orden público. 31 L.P.R.A. sec. 3372; *Álvarez v. Rivera*, 165 D.P.R. 1, 17 (2005); *Vélez v. Izquierdo*, 162 D.P.R. 88, 98 (2004); *S.L.G. Irizarry v. S.L.G. García; supra*, págs. 724-25; *Trinidad v. Chade*, 153 D.P.R. 280, 289 (2001); *Arthur Young & Co. v. Vega III*, 136 D.P.R. 157, 169-70 (1994); *Plaza del Rey, Inc. v. Registrador*, 133 D.P.R. 188, 192-93 (1993). Una vez las partes prestan su consentimiento, quedan entonces vinculadas por los términos del contrato, siendo éste la ley entre las partes. 31 L.P.R.A. sec. 2994. *Constructora Bauzá, Inc. v. García López*, 129 D.P.R. 579, 593 (1991); *Cervecería Corona v. Commonwealth Ins. Co.*, 115 D.P.R. 345 (1984).

Siguiendo estos principios, hemos señalado que "el alcance de la opción aludida no se puede fijar sin tomar en cuenta el contenido específico que en [el] contrato se le imparte." *Zeta Enterprises, Inc. v. E.L.A.*, 145 D.P.R. 1,

10 (1998). Así, ya hemos reconocido la posibilidad de que las partes convengan que el derecho de opción esté supeditado al cumplimiento de ciertas condiciones. *Id. Véase además*, *Mayagüez Hilton Corp. v. Betancourt*, *supra*. En estos casos, aunque "[u]na opción típica implica que el poseedor del derecho tiene la iniciativa de decidir" si se celebrará el contrato definitivo, en realidad el optante "no dispone de un ámbito ilimitado de voluntariedad". *Zeta Enterprises, Inc. v. E.L.A.*, *supra*, pág. 10. Vemos pues que se trata de "disposiciones [que] cualifican el ámbito de la opción, conforme a la voluntad de las partes contratantes". *Id.*

Tras examinar estas normas, veamos ahora las alegaciones de las partes.

III.

Las partes del caso de autos coinciden en que celebraron un contrato de opción en el cual los peticionarios (optatarios) concedieron a los recurridos (optantes) la facultad exclusiva de decidir si adquirían un inmueble comercial, por el precio convenido de $130,000.00. Asimismo, están de acuerdo en que el período de opción tuvo una vigencia de treinta días a partir de la firma del contrato de opción. Empero, las partes tienen diferencias respecto a si el referido derecho de opción fue ejercitado propiamente antes de que el plazo de la opción caducara.

Concretamente, los recurridos sostienen que los peticionarios tuvieron conocimiento de la intención de

aquéllos de adquirir la propiedad y las gestiones que realizaban en una institución bancaria para obtener el financiamiento de la compraventa, todo ello dentro del plazo de treinta días concedido. Por lo tanto, afirman los optantes, al comunicar su voluntad a los optatarios ejercieron su derecho de opción, sin que fuera necesario realizar ningún acto ulterior. De otro lado, los peticionarios arguyen que en este caso en particular no era suficiente que los optantes comunicaran la intención de comprar el inmueble para que se entendiera ejercido el derecho de opción, ya que el contrato suscrito por las partes delimitaba cómo se debía ejercer dicho derecho.

La controversia suscitada entre los contratantes concierne *la forma* en la que se ejerce el derecho de opción. El núcleo de la disputa gira en torno a las supuestas restricciones que las partes incluyeron en el contrato de opción respecto a la manera en que los optantes podían consumar dicho contrato. En otras palabras, tratamos aquí con la posibilidad de que las partes convengan métodos específicos para el ejercicio de la opción. Al percatarnos que no existe en nuestro acervo jurisprudencial normas que atiendan directamente este asunto, estimamos apropiado examinar brevemente la doctrina civilista.

A.

Como mencionáramos anteriormente, en el ámbito de los contratos de opción las partes gozan de plena libertad para

diseñar convenios que atiendan adecuadamente sus necesidades e intereses, siempre y cuando no violen la ley, la moral ni el orden público.   31 L.P.R.A. sec. 3372. *Véase* Michel J. Godreau Robles, *La Opción de Compra en Puerto Rico*, 53 Rev. Jur. UPR 563, 577 (1984) ("En la configuración de sus relaciones económicas, las partes que suelen recurrir a estos contratos preliminares operan dentro del ámbito de la autonomía de la voluntad como generadora de las obligaciones.   Son las partes quienes definen los límites de sus respectivas responsabilidades. De no mediar circunstancias opresivas o violatorias de la buena fe, no hay por qué buscar en estos contratos resultados distintos a los que razonablemente puedan derivarse de la finalidad económica que persiguen los contratantes.").   La mayoría de las veces, los sujetos involucrados en un contrato de opción de compraventa oneroso acuerdan que el optatario mantendrá abierta su oferta de venta durante cierto plazo, en contraprestación a una suma de dinero que brinda el optante, comúnmente llamada "prima".   Desde entonces queda perfeccionado el referido contrato y el optante —mientras le asiste la facultad de ejercer la opción— no tiene ninguna obligación que satisfacer.

No obstante, la doctrina civilista ha reconocido que nada impide a las partes arribar a otros resultados que podrían considerarse atípicos.   *Véase* José Ángel Torres Lana, *Contrato y Derecho de Opción*, Madrid, Ed. Trivium, 2da

ed., 1987, pág. 153 ("las partes, al amparo una vez más del principio de autonomía de la voluntad, pueden configurar a su arbitrio la o las obligaciones que deba el optante cumplir, aunque en la práctica se detectará, en una mayoría abrumadora de ocasiones, que esta obligación consiste en el pago de una suma de dinero".).  Por ejemplo, más allá de poder requerir el cumplimiento de ciertas condiciones previo al ejercicio de la opción, como aquéllas examinadas en *Zeta Enterprises, Inc. v. E.L.A.*, *supra*, y *Mayagüez Hilton Corp. v. Betancourt*, *supra*, varios académicos han afirmado que las partes del contrato de opción de compraventa podrían acordar que el ejercicio de la opción venga acompañado del pago —parcial o total— del precio de la propiedad objeto de venta.

A esos efectos la profesora Sanciñena Asurmendi comenta que los contratantes pueden incluir en el acuerdo de opción de compra cláusulas que exijan que el optante ejecute ciertos actos simultáneos al ejercicio de la opción, de forma tal que de no realizarse, se estimará como no ejercido el derecho de opción.  Camino Sanciñena Asurmendi, *La Opción de Compra*, Madrid, Ed. Dykinson, 2003, pág. 220.  Por ello concluye que "[c]uando en el contrato de opción de compra, las partes convengan la necesidad de pagar el precio de la compraventa en el momento de ejercicio de la opción de compra, si el optante no realiza el ofrecimiento o no lo consigna, se entenderá que la opción no se ejerció en forma, aunque se haya ejercido en

tiempo." *Id.*, pág. 221. *Véase también* Puig Brutau, *op. cit.*, pág. 61 ("Con el ejercicio del derecho de opción, el optante perfecciona la compraventa proyectada, la cual queda pendiente de consumación, *sin perjuicio de que las partes hayan dejado establecido que en el momento de manifestar afirmativamente la opción el comprador, deba entregar o depositar, en todo o en parte, el precio convenido.*") (Énfasis suplido y suprimidos).

Ante la novedad del asunto que hoy se nos plantea, resulta particularmente persuasiva la abundante jurisprudencia civilista producida por el Tribunal Supremo de España. Hemos apreciado que dicho Foro cuenta con una doctrina robusta, reiterada constantemente, que sanciona de manera positiva la libertad y autonomía de la cual gozan las partes del contrato de opción para incluir en él aquellas exigencias que consideren adecuadas respecto a *la forma en que se deberá ejercer el derecho de opción por el optante*. Al aprobar este tipo de acuerdo, el Tribunal Supremo español ha expresado que, en ocasiones, la mera declaración de voluntad no es suficiente para ejercer la opción:

> Tal ejercicio no basta por sí mismo cuando se ha convenido que ha de ir acompañado de pago del precio acordado para la compraventa, tanto total como en forma parcial. En el caso de autos ha quedado suficientemente probado que la recurrente no realizó pago ni desembolso alguno, conforme a los términos del contrato, con lo cual resulta que llevó a cabo un despliegue de voluntad incompleto y contradictorio del negocio, por lo que la opción perdió toda su eficacia, ya que se carecía de facultades para postergar el desembolso del precio a que se había comprometido

> y cuyo cumplimiento era factible, conforme queda
> sentado.   En consecuencia, la opción ha de
> tenerse por caducada . . . .

STS Núm. 941, 2 de noviembre de 1995.  Asimismo, el citado

Tribunal ha concluido que un contrato de opción en el cual

se pacta la forma en que podrá llevarse a cabo el ejercicio

de la opción —por ejemplo, requiriendo del optante el pago

simultáneo del precio de la compraventa—

> ni contradice la naturaleza del contrato de
> opción, ni su sometimiento a las normas generales
> de las obligaciones y contratos, dado el
> principio de autonomía de la voluntad y la
> facultad del concedente, prominente u optatorio
> de poner condiciones al optante para su
> aceptación, lo que tampoco está en pugna con la
> libertad de juicio y criterio de éste, ni con la
> tradicional y vigente jurisprudencia . . ., que
> tiene un carácter general, necesitado de las
> especificaciones de cada caso concreto, pues la
> oferta no siempre se manifiesta de modo simple,
> sino con condicionantes elevados por el oferente
> a la cualidad de esenciales, de manera tal que si
> no se cumplen de modo estricto no se produce el
> concurso de la oferta y la aceptación . . . .

STS de 17 de noviembre de 1986.[2]

---

[2] Otras de las sentencias del Tribunal Supremo de España que muestran la referida doctrina son: STS Núm. 552, 17 de septiembre de 2010 ("La libertad de pactos consiente que el ejercicio de la opción se supedite al simultáneo ofrecimiento del pago, o a su consignación, . . . en cuyo caso tal ofrecimiento o pago opera como requisito o condición ineludible para el ejercicio de la opción."); STS Núm. 927, 11 de octubre de 2002 ("nos hallamos ante una excepción a la regla general según la cual no es exigible la entrega de la cosa ni el pago del precio para que el ejercicio de la opción dé lugar a la perfección del contrato de compraventa"); STS de 24 de junio de 1993 ("existirán casos concretos en los que su ejercicio dependa de la simple manifestación de voluntad, sin necesidad de poner el precio a disposición del vendedor hasta que se otorgue la escritura, pero en otros, como ocurre en el que nos ocupa, ha de pagarse 'el día que se ejercitará la opción', extremo obligatorio a virtud del 'pacta sunt servanda' . . ."). *Véanse además*, STS Núm. 752, 5 de julio de 2006; STS Núm. 865, 27 de octubre de 2005; STS Núm. 467,

B.

Consideramos que la norma hasta aquí expuesta es el desenlace forzoso del principio de la autonomía de la voluntad aplicado a los contratos de opción. Dicha autonomía creadora gestó en su momento derechos atípicos como el derecho de superficie y el propio derecho de opción, ausentes en nuestro Código Civil. La libertad y flexibilidad que éste otorga en el artículo 1207, 31 L.P.R.A. sec. 3372, para que los sujetos desarrollen convenios ajustados a sus intereses, limitados por el llamado a respetar la ley, la moral y el orden público, permite que las relaciones contractuales en nuestra jurisdicción evolucionen y respondan de forma adecuada a las exigencias que los nuevos tiempos presentan. Son las partes contratantes las que mejor pueden decidir, mediante diálogos y negociaciones, cómo deben configurarse sus obligaciones.

Todo ello nos lleva a concluir que al amparo del artículo 1207, 31 L.P.R.A. sec. 3372, las partes de un contrato de opción pueden establecer no sólo el plazo durante el cual estará vigente la opción, sino la forma en que deberá ejercerse el derecho de opción dentro del plazo. Los medios o restricciones que así se diseñen, deben ser claros y conservar el carácter unilateral del ejercicio de

---

19 de mayo de 2003; STS Núm. 712, 6 de julio de 2001; STS Núm. 112, 14 de febrero de 1997; STS Núm. 116, 25 de febrero de 1996; STS de 3 de febrero de 1992; STS de 12 de junio de 1992; STS de 1 de diciembre de 1992; STS de 6 de abril de 1987; STS de 7 de julio de 1986; STS de 6 de febrero de 1981.

la opción. Es decir, cualquier acto que se deba realizar junto a la tradicional declaración de voluntad para ejercer la opción, según sea acordado por las partes, siempre tiene que depender del exclusivo arbitrio del optante. De manera que el ejercicio de la opción no puede supeditarse a eventos que requieran la participación del optatario, ya que entonces se destruiría el carácter unilateral del ejercicio; característica esencial del contrato de opción.

Ante un despliegue de la voluntad para ejercer la opción, que no satisfaga el pacto respecto a la forma en que el derecho de opción debió ser ejercido, se debe considerar un acto ineficaz por lo cual no perfeccionará el contrato definitivo. Sin embargo, mientras continúe transcurriendo el plazo de la opción, el optante conservará su derecho y podrá rectificar su conducta a los efectos de ejercer la opción cumpliendo con lo acordado por las partes. *Véase* Javier Talma Charles, *El Contrato de Opción*, Barcelona, Ed. J.M. Bosch, 1996, pág. 256. Si venciera el plazo sin que el optante ejerza efectivamente la opción en la forma en que las partes lo estipularon, su derecho habrá de caducar.

Finalmente, en ausencia de un pacto sobre la forma de ejercer el derecho de opción, debe bastar con la mera declaración de voluntad por parte del optante para que se consuma el contrato de opción y, a su vez, se perfeccione el contrato definitivo por el cual se optó. En estos supuestos el optatario está vedado de requerir cualquier

acto no previsto en el contrato de opción para que el optante pueda ejercer su derecho. *Véase* Torres Lana, *op. cit.*, pág. 262.

Contando ya con las normas aplicables, pasemos ahora a evaluar el contrato de opción suscrito por las partes en el caso de autos. Para ello, debemos examinar el mismo siguiendo las reglas de interpretación dispuestas en nuestro Código Civil.[3]

IV.

La controversia suscitada entre las partes sólo requiere que evaluemos si los contratantes delimitaron una forma específica en la cual se debía ejercer el derecho de opción, alejándose así de la norma general referente al ejercicio de la opción mediante la mera declaración de voluntad.

---

[3] Los artículos 1233 y 1235-37 del Código Civil, 31 L.P.R.A. secs. 3471, 3473-75, disponen:

"Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.

Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas."

"Cualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquéllos sobre que los interesados se propusieron contratar."

"Si alguna cláusula de los contratos admitiere diversos sentidos, deberá entenderse en el más adecuado para que produzca efecto."

"Las cláusulas de los contratos deberán interpretarse las unas por las otras, atribuyendo a las dudosas el sentido que resulte del conjunto de todas."

A esos fines, una lectura integrada del *Contrato de Opción a Compra*, *supra*, refleja que el término de treinta días, acordado como plazo de la opción por las partes, únicamente se estableció en el tercer inciso de las Cláusulas y Condiciones. En esa misma cláusula las partes acordaron el precio de la venta y cómo éste sería desembolsado: primero, el pago de una prima de $3,000.00 al firmarse el contrato de opción y, segundo, el pago del remanente del precio **"en o antes de treinta (30) días a partir del día [de la firma del contrato de opción]"**. *Id*. Esta instrucción para realizar el pago del precio de la venta en treinta días, es la misma —y la única— que creó el plazo del derecho de opción. Por lo tanto resulta evidente que, al amparo de la estipulación del contrato, el término para el ejercicio de la opción quedó entrelazado al pago del precio de la compraventa. *No se acordó meramente un plazo para ejercer la opción, se pactó un plazo de treinta días para que el optante ejerciera la opción entregando al optatario $127,000.00.* Este acuerdo, conforme a la autonomía de la voluntad de las partes, reguló la forma en que se habría de ejercer el derecho de opción. Siendo uno válido, los contratantes venían obligados a cumplirlo cabalmente.

De otra parte, en la cláusula sexta del contrato se convino que "[d]e vencerse el término de esta opción y no firmarse la escritura, este contrato quedará nulo y la PARTE VENDEDORA queda en libertad de vender la propiedad a

otro posible comprador". *Id*. La parte peticionaria sostiene que la citada cláusula tuvo el efecto de condicionar el ejercicio de la opción a que se otorgara la escritura de compraventa. A su vez, alega que tras transcurrir el término de treinta días de la opción sin que se otorgara la escritura, la parte recurrida no ejerció su derecho de opción en tiempo y forma. En este extremo, no le asiste la razón a los peticionarios.

Según discutimos previamente, aunque las partes en un contrato de opción disfrutan de libertad para diseñar el tiempo y la forma en que el derecho de opción podrá ser ejercido, los mecanismos que tengan por bien deberán conservar las características esenciales del derecho de opción. En lo pertinente al caso de autos, la parte peticionaria no puede pretender leer la cláusula sexta como ahora pretende, pues ello significaría sujetar el ejercicio de la opción a un evento que requiere no sólo un acto del optante, sino también la participación activa del optatario: la escritura de compraventa. En otras palabras, la consumación del contrato de opción —y por ende la perfección del contrato definitivo de compraventa— dependería de la voluntad y el consentimiento de ambas partes, no ya del optante exclusivamente. Ello, sin duda, es contrario a la figura de la opción, la cual se distingue por brindar únicamente al optante la facultad de ejercer el derecho de opción. Consecuentemente, la parte peticionaria no podía exigir el otorgamiento de dicha escritura como

condicionante al reconocimiento del ejercicio efectivo del derecho de opción.

A pesar de ello, visto todo lo anterior y conforme a la doctrina enunciada, debemos concluir que las partes incluyeron en el contrato de opción reglas concernientes a la forma en que se habría de ejercer el derecho de opción. Específicamente, convinieron que en caso que los recurridos decidieran adquirir la propiedad objeto del contrato, tendrían que comunicar dicha voluntad entregando el precio de la compraventa —restando la prima— en el plazo de treinta días a partir de la fecha en que suscribieron el contrato de opción. Por ello, erró el foro apelativo intermedio al razonar que bastaba informar la intención de adquirir la propiedad para que se estimara ejercida la opción.

Según fue probado en los foros recurridos, los optantes no pusieron a disposición de los optatarios el precio de la compraventa ($127,000.00) dentro del plazo de la opción. Siendo así, independientemente de que la voluntad de los optantes respecto a la adquisición de la propiedad hubiera llegado a los optatarios a tiempo, la opción no fue efectivamente ejercida debido a que se incumplió el contrato de opción en cuanto a la forma del ejercicio de la opción. *Véase*, *Olazábal v. U.S. Fidelity, etc.*, 103 D.P.R. 448, 462 (1975) ("Los tribunales de justicia no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato cuando dicho contrato es legal y válido y no contiene vicio alguno.").

En conclusión, trascurrido el término de la opción sin que ésta se ejerciera en tiempo y forma por los recurridos, la misma caducó.    Desde entonces la parte peticionaria podía poner en el mercado la propiedad sobre la cual se había optado y ofrecerla a cualquier otro posible comprador, como en efecto hizo.

Anabelle Rodríguez Rodríguez
Juez Asociada