ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| PRADERAS DE NAVARRO SHOPPING CENTER CORP.<br><br>Apelada<br><br>v.<br><br>PRECISE BALANCING TECHNIQUES, INC. H/N/C ECO PLUS; ECO PLUS CORP., SR. ERIC RODRÍGUEZ RIVERA garantizador solidario, SRA. BRENDA PIÑERO LUGO garantizadora solidaria y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Apelantes | KLAN202200934 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: GR2018CV00041<br><br>Sobre: Desahucio y Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Rodríguez Flores y la Jueza Martínez Cordero[1].

*Martínez Cordero, jueza ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 22 de febrero de 2024.

Comparece Precise Balancing Techniques, Inc. (Precise), el señor Eric Rodríguez Rivera (señor Rodríguez Rivera); la señora Brenda Piñero Lugo (señora Piñero Lugo) y la Sociedad Legal de Gananciales (SLG) compuesta por ambos (en conjunto, apelante) para solicitarnos la revisión de la *Sentencia*, emitida el 25 de noviembre de 2019, y notificada el 12 de septiembre de 2022, por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, TPI). Mediante el dictamen apelado, el foro primario declaró *Ha Lugar* la *Demanda* sobre cobro de dinero. Sobre dicho dictamen, la parte apelada solicitó de forma oportuna una reconsideración y producto de esta el foro primario enmendó su

---

[1] Véase, Orden Administrativa OATA-2023-001 del 9 de enero de 2023, en la que se asigna el presente recurso a la Hon. Beatriz M. Martínez Cordero en sustitución del Hon. Félix Figueroa Cabán.

Número Identificador

SEN2024_____

*Sentencia,* emitiendo su dictamen en reconsideración mediante la *Sentencia* emitida el 5 de octubre de 2022, notificada al día siguiente.

Por los fundamentos que expondremos, *se confirma* la *Sentencia* apelada.

**I**

El 24 de abril de 2018, se presentó una *Demanda* en la cual Praderas de Navarro Shopping Center Corp. (en adelante, Praderas y/o apelada) presentó una *Demanda* de Desahucio y Cobro de Dinero contra la parte apelante.[2] Adujo ser dueña del centro comercial Praderas, localizado en San Lorenzo. Expresó que, mediante un contrato suscrito y juramentado, le arrendó a Precise, así como al señor Rodríguez Rivera y a la señora Piñero Lugo, cada uno en su carácter de garantizador solidario y por espacio de cinco (5) años, el local comercial número uno (1) ubicado en el referido centro comercial. Arguyó que el canon de arrendamiento era de $1,793.85 mensuales. Conforme surge de las alegaciones, el contrato de arrendamiento venció el 31 de mayo de 2015, sin que se hubiese renovado el mismo, por lo que mantenía una vigencia automática de mes a mes. Alegó que la parte apelante incumplió con el pago del canon de arrendamiento, por lo que incumplió con el contrato, adeudando $49,038.24, cuya deuda estaba vencida era líquida y exigible, así como que hicieron gestiones de cobro las cuales resultaron infructuosas. Expuso que, dado el incumplimiento la parte apelante, venía, además, obligada a pagar intereses equivalentes al 5.25%, desde la fecha en que se declaró vencida la deuda, hasta su pago total. Además, expresó que, conforme a los términos y condiciones del contrato, tenía derecho a cobrar gastos y honorarios de abogado, por haber tenido que recurrir al Tribunal a

---

[2] Apéndice de la parte apelante, a las págs. 1-4.

reclamar el pago. En la *Demanda,* solicitaron al foro primario que ordenara el desahucio de la parte apelante del local en cuestión, así como el pago de los $49,038.24, más las sumas que se acumularan hasta el desalojo de la propiedad, los intereses a razón del 5.25% pactado hasta el pago total, así como la suma de $10,000.00 por concepto de gastos y honorarios de abogado.

Subsiguientemente, el 1 de mayo de 2018, se celebró una vista. Producto de la referida vista y en esa misma fecha, el foro primario emitió una *Sentencia Parcial por Estipulación.*[3] De la *Sentencia Parcial* se desprende lo siguiente:

> Las partes informaron al tribunal sobre el acuerdo alcanzado en cuanto al desahucio. La parte demandada se compromete a pagar en un plazo no mayor de quince (15) días la cantidad de diez mil ($10,000.00) dólares, cantidad que será acreditada a la deuda. La parte demandante le concede un término de tres (3) meses para desalojar la propiedad. Se establece que para el 01 de agosto de 2018 la parte demandada tiene que haber completado el proceso de desalojo. De la parte demandada incumple [sic] con los cánones de arrendamiento, la parte demandante solicitará su lanzamiento. --------------------------------------------------
> En vista de lo anterior, este tribunal imparte su aprobación y dicta sentencia de conformidad al acuerdo de las partes en cuanto al desahucio. --------------------
> En cuanto al cobro de dinero, se señala Juicio en su Fondo para el 12 de junio de 2018, a las 9:00 de la mañana. -----------------------------------------------------[4]

Así las cosas, el 2 de julio de 2018, Precise presentó su *Contestación a la Demanda.*[5] En general, negó prácticamente todas las alegaciones e incluyó defensas afirmativas. En la referida contestación, Precise alegó haber recibido una gestión de cobro de manera extrajudicial, pero adujo no haber recibido respuesta de la parte apelada.[6] Se desprende de los autos que, tanto al señor Rodríguez Rivera, a la señora Piñero Lugo, así como a la SLG compuesta por ambos, se les anotó la rebeldía.

---

[3] *Id.,* a las págs. 20-21.
[4] *Id.,* a la pág. 20.
[5] *Id.,* a las págs. 24-25.
[6] *Id.,* a la pág. 25.

Luego de varios incidentes innecesarios detallar, el 22 de octubre de 2019, se presentó el Informe de Conferencia con Antelación a Juicio.[7] Luego, el 25 de noviembre de 2019, se celebró el juicio en su fondo. Previo a iniciar con el desfile de la prueba, el Tribunal autorizó el desistimiento voluntario de la parte apelada contra ECO Plus, Corp.[8] La prueba testimonial de la parte apelada consistió en el testimonio de la señora Zailise Pagesy Roussel, mientras que el de la parte apelante consistió en el de la señora Piñero Lugo. Por su parte, la prueba documental recibida consistió en la copia del contrato de arrendamiento, el cual quedó marcado como Exhibit 1 por estipulación de las partes y un estado de cuenta,[9] marcado como Exhibit 1 de la parte apelada. Durante el juicio en su fondo, ambas partes tuvieron la oportunidad de interrogar y contrainterrogar a las testigos. Quedando el caso sometido, el 25 de noviembre de 2019, el TPI emitió su *Sentencia*, la cual fue notificada el 12 de septiembre de 2022.[10] En ella, el tribunal apelado declaró Ha Lugar la *Demanda* y ordenó a la parte apelante a satisfacer a la parte apelada la suma de $14,444.11 por concepto de suma principal.[11] Conforme se desprende de la *Sentencia,* el foro primario emitió la siguiente expresión:

> El Licenciado Rodríguez Beltrán reconoce que existe una deuda, pero entiende que es de $24,444.11 a los cuales se le debe adjudicar $10,000 que obra en la Sentencia Parcial, reduciendo la deuda a $14,444.11.[12]

Inconforme con el curso decisorio del foro primario, el 28 de septiembre de 2022, Praderas presentó una *Moción de*

---

[7] *Id.,* a las págs. 158-177.
[8] *Id.,* a la pág. 198.
[9] Intitulado "Praderas de Navarro Shopping Center Transaction List by Customer".
[10] Apéndice de la parte apelante, a la pág. 187. De la *Sentencia* emitida se desprende que el dictamen fue reducido a escrito el 8 de septiembre de 2022. Según se desprende del Sistema Unificado de Manejo y Administración de Casos, (SUMAC), a la fecha en que se emitió la *Sentencia* reducida a escrito el 8 de septiembre de 2022, y al presente, la jueza que preside los asuntos relacionados a este caso es la Hon. Myrna E. Ayala Díaz. Conforme al registro de asignaciones del SUMAC, la asignación del caso a la referida juez es del 24 de mayo de 2022.
[11] Apéndice de la parte apelante, a la pág. 187.
[12] *Id.,* a la pág. 187.

*Reconsideración.*[13] Adujo que la *Sentencia* debía ser reconsiderada fundamentando su solicitud en que la determinación no estaba sustentada en la prueba que obraba en el expediente y solo respondía a las expresiones de uno de los abogados de las partes las cuales no constituían prueba admisible en evidencia.[14] En su escrito, Praderas solicitó que enmendara la *Sentencia* emitida y determinara expresamente la responsabilidad solidaria de la parte apelante; se enmendara conforme a la prueba la deuda de los codemandados la cual ascendía al momento del juicio a $37,938.24; y que se impusiera el pago de intereses a una tasa del 6.50%; y se impusiera a la parte apelante el pago de las costas, gastos y honorarios de abogado.

En respuesta a la solicitud de reconsideración, el foro primario reconsideró, por lo que emitió una nueva *Sentencia.* Esta *Sentencia,* objeto de esta revisión judicial, fue emitida el 5 de octubre de 2022, notificándose al día siguiente.[15] En ella, el tribunal *a quo*: (i) incluyó en su dictamen la autorización del desistimiento contra ECO Plus corp.; (ii) determinó que Precise, el señor Rodríguez Rivera y la señora Piñero Lugo eran deudores solidarios y les impuso el pago de $37,938.24 por concepto de cánones de arrendamiento vencidos y no pagados; (iii) les impuso el pago de los intereses sobre la suma adeudada ($37,938.24) a razón del 5.25%, sin que excediera la tasa de interés máxima permitida en Puerto Rico computados desde el vencimiento de la deuda hasta su saldo total; y (iv) ordenó el pago de $10,000.00 por concepto de costas, gastos y honorarios de abogado según reclamados en la *Demanda,* obligación pactada en el contrato de arrendamiento.[16] Como parte del dictamen emitido,

---

[13] Véase, *In re Medidas Jud. Huracán Fiona,* 210 DPR 609 (2022), sobre extensión de términos.
[14] Apéndice de la parte apelante, a las págs. 191-192.
[15] *Id.,* a las págs. 197-204.
[16] *Id.,* a las págs. 203-204.

la primera instancia consignó las siguientes determinaciones de hechos:

## DETERMINACIONES DE HECHOS

1. La parte demandante es dueña del centro comercial conocido como Praderas Shopping Center, el cual consta de varios locales comerciales.

2. El 17 de marzo de 2010, la parte demandante como arrendador (Lessor), Precise Balancing Techniques, Inc. como arrendadora (Lessee) y los codemandados Eric Rodríguez Rivera y Brenda Piñero Lugo como garantizadores (Guarantors), suscribieron un Contrato de Arrendamiento sobre el local identificado como el número 1 del centro comercial de la parte demandante. Este Contrato fue suscrito y juramentado ante Notario Público.

3. La Sra. Brenda Piñero Lugo reconoció que el Contrato de Arrendamiento contenía su firma e iniciales y que el codemandado Eric Rodríguez Rivera era su esposo y firmó de igual forma el contrato.

4. El Artículo A, Inciso 3 del Contrato de Arrendamiento sobre fechas establece lo siguiente:

   *"3. Dates*
   *a. Rent Start Date is June 1st, 2010, is the date on which the first payment of is due.*
   *b. "Delivery Date" means the date on which Lessor makes the premises available to Lessee, which shall be the signing date of this agreement[.]*
   *c. "Term" shall mean the period commencing on the Effective Date and ending on the date specified in a notice of termination given pursuant to this Lease Agreement. This Lease Agreement shall commence on the Effective Date and continue in effect until the last date of the calendar month in which the Effective Date occurs. This Lease Agreement shall be automatically renewed thereafter for periods of one (1) month each, unless terminated earlier, as provided in the following paragraph or in Section C.6[.]*
   *d. "Termination Date: means the date of termination which is May 31, 2015.*
   *e. "Effective Date"; The date on which this Lease Agreement is duly signed by both parties."*

5. Según los términos del Contrato, a partir del 31 mayo de 2015, este continuó con una vigencia automática de mes a mes hasta el 31 de julio de 2018. [nota omitida]

6. El Artículo A, Inciso 4 del Contrato de Arrendamiento establece lo siguiente:
   "4. The Basic Rent and other charges shall be $1,793.85, fixed during the term of this lease, payable on the first day of each month and includes Common Area Maintenance (Waste Management, Parking, Public Lightning, etc.) charges. All Utilities (Electricity, water, etc.) and applicable taxes, including property tax, pro rata squared feet distribution, will be paid by Lessee."

7. El Artículo C sobre términos y condiciones generales (General Term and Conditions) del Contrato de Arrendamiento en su Inciso 4 sobre pagos, establece lo siguiente:

   "4. Payment.

   (a) Lessee shall pay Lessor the amounts set forth in Section A.4, without notice or demand, on or before the first day of each month, not to exceed ten (10) natural days, commencing on the Rent Start date. All amounts due shall be paid al Lessor's main office or at such other location as Lessor may specify, by check or money order (or certified check if required by Lessor).
   (b) Lessee shall pay lease deposit in the amount of $3,587.77, to be paid at signage of this agreement. This deposit will be held by the Lessor during the term of this lease and shall be returned in the event that this agreement upon termination is not renewed and no balances or applicable charges are due by Lessee upon termination.
   (c) If Lessee shall fail to make any payment to Lessor when due, Lessee shall pay Lessor interest on any overdue amount equal to 4% points above the prime rate, not to exceed the maximum interest rate allowed by law in Puerto Rico, from the date amount is due until it is paid.
   (d) Lessee shall pay Lessor all amounts then owed by Lessee to Lessor, whether for damage to the Premises or Shopping Center or otherwise, including, without limitation, amounts for which Lessee is liable or with respect to which Lessee has agreed to indemnify Lessor under any of the provisions of this License Agreement, which then may be owing or unpaid, and all cost and expenses, including court cost and attorney's fees incurred by Lessor in the enforcement of its rights and remedies hereunder."

8. El Artículo C, Inciso 14 sobre garantías del Contrato de Arrendamiento establece lo siguiente:

"14.     Guaranty:     Guarantor absolutely, unconditionally, and irrevocably guarantees lo Landlord:

(a) The full and prompt payment when due, whether upon acceleration or otherwise, and at all times thereafter, of any and all rentals, debts and obligations of Tenant for the payment of money, however created, arising or evidenced, whether direct or indirect, absolute or contingent, now or hereafter existing, due or to become due, know or unknown to Guarantor at the time of the execution of this Guaranty, including, without limitation, all rent, late fees, rent adjustments, payments in respect of real estate taxes, assessments, governmental charges, premiums for insurance policies, amounts required to discharge mechanics and material men's liens and claims therefore, and any other sums which may now be or hereafter become due by Tenant under the Lease;

(b) The payment of all Enforcement Cost (as hereafter defined); and

(c) The full, complete and punctual observance, performance and satisfaction of all covenants, terms, conditions, obligations, duties and agreements of Tenants under the lease.

All amounts due and debts, described in paragraph four d (4 d) and five (5) are referred to herein as the "Liabilities". All obligations described in paragraph four a (4 a), four b (4 b) and six (6) are referred to herein as the "Obligations".

9. Los codemandados Eric Rodríguez Rivera y Brenda Piñero Lugo son garantizadores y deudores absolutos y solidarios ante la parte demandante y responden por todas las obligaciones asumidas por Precise.

10. La testigo Zailise Pagesy Roussel, contadora de Praderas, a quien este Tribunal dio entrera [sic] credibilidad, declaró que a la fecha del juicio la parte demandada adeudaba a Praderas la suma de $37,938.24 por concepto de cánones de arrendamiento vencidos y no pagados. [nota omitida]

11. La parte demandante realizó gestiones de cobro a la parte demandada sin que estos hubiesen emitido los pagos correspondientes.

12. La testigo Zailise Pagesy Roussel, declaró que el Contrato de Arrendamiento no había sido enmendado o modificado de conformidad con sus propios términos.

13. El Artículo C, Inciso 13 del Contrato de Arrendamiento sobre enmiendas o modificaciones establece lo siguiente:

"13. Entire Agreement; Modifications: All prior or contemporaneous understandings and agreements, oral o [sic] written, made between the parties are merged in this Lease Agreement. No modification or amendment of this Lease Agreement or of any of its conditions or provisions shall be binding upon Lessor unless in writing signed by both Lessor and Lessee.

14. La Sra. Brenda Piñero Lugo admitió no haber firmado documento sobre modificación o enmienda del contrato.

15. La parte demandada no presentó evidencia ni recibo de pago de la deuda reclamada por la parte demandante.

16. La deuda ascendente a $37,938.24 está vencida, es líquida y exigible.

Inconforme, el 20 de octubre de 2022, la parte apelante presentó *Moción en Solicitud de Reconsideración y Determinaciones de Hechos y Conclusiones de Derecho (Regla 47 y 43 de Procedimiento Civil) sobre la Sentencia notificada el 6 de octubre de 2022*,[17] la cual fue denegada mediante *Orden* emitida el 23 de octubre de 2022.[18]

En desacuerdo, el 23 de noviembre de 2022, la parte apelante presentó *Alegato en Apelación* mediante el cual esgrimió la comisión de los siguientes tres (3) errores:

(1) ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ACTUAR MEDIANDO ERROR MANIFIESTO[,] PERJUICIO Y PARCIALIDAD AL EMITIR UNA SENTENCIA EN RECONSIDERACIÓN QUE NO SE SOSTIENE EN LA PRUEBA PRESENTADA EN EL RÉCORD.

(2) ERR[Ó] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO APLICAR A LA DEUDA LA SUMA DE $10,000.00 PAGADA POR PRECISE BALANCING TECHNIQUES[,] INC. COMO PARTE DE UN ACUERDO TRANSACCIONAL[.]

(3) ERR[Ó] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL IMPONER PARTIDAS SOBRE HONORARIOS, INTERESES Y HACER UNA

---

[17] Apéndice de la parte apelante, a las págs. 205-221.
[18] *Id.,* a la pág. 239.

DETERMINACIÓN DE SOLIDARIDAD, SOBRE UN CONTRATO DE ARRENDAMIENTO QUE NO TAN SOLO VENCIÓ[,] SINO QUE FUE OBJETO DE MODIFICACIÓN EXTINTIVA.

Luego de que la parte apelante presentara la transcripción de la prueba oral (en adelante, TPO), la parte apelada presentó sus objeciones, sobre lo cual este Tribunal tomó conocimiento. Por otro lado, el 28 de abril de 2023, la parte apelada presentó *Alegato de la Parte Apelada*.

Con el beneficio de la comparecencia de ambas partes, procederemos a exponer el derecho aplicable.

**II**

**A. Apelación Civil**

La Regla 52.2 (a) de las Reglas de Procedimiento Civil,[19] dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[20] La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[21] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.
> [...]

No obstante, el término de treinta (30) días para acudir en alzada puede quedar interrumpido mediante la presentación

---

[19] 32 LPRA Ap. V, R. 52.2 (a).
[20] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000); *Arriaga v. FSE*, 145 DPR 122, 131 (1998); *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[21] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).

oportuna de una moción de reconsideración fundamentada.[22] En tal caso, el curso del término para apelar comienza a partir del archivo en autos copia de la notificación de la resolución que resuelve la moción.[23] Esto, a pesar de que se haya declarado la moción No Ha Lugar.

## B. Teoría General de los Contratos y el Contrato de Arrendamiento

Bajo nuestro crisol doctrinario, "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia".[24] Dichas obligaciones contractuales tienen fuerza de ley entre las partes y deben cumplirse según lo pactado.[25] En nuestro ordenamiento jurídico, rige el principio de libertad de contratación.[26] Las partes contratantes, bajo el principio de autonomía contractual, pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a la ley, a la moral, ni al orden público.[27]

Por lo tanto, una vez perfeccionado un contrato con el mero consentimiento, las partes que lo suscriben están sujetas, a hacer valer el cumplimiento de lo pactado, y a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.[28] Para que se considere que existe un contrato se requiere que concurran tres (3) requisitos: (i) consentimiento de los contratantes, (ii) un objeto cierto que sea materia del contrato, y (iii) la causa de

---

[22] 32 LPRA Ap. V, R. 47.
[23] *Id.*
[24] 31 LPRA § 2992, Art. 1042. El Código Civil de Puerto Rico de 1930 fue derogado por el Código Civil de Puerto Rico de 2020 aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia que nos ocupa.
[25] 31 LPRA § 2994, Art. 1044.
[26] *Oriental Finance v. Nieves*, 172 DPR 462, 470 (2007).
[27] 31 LPRA § 3372, Art. 1207; *Oriental Finance v. Nieves, Id.*, 470-471; *Vélez v. Izquierdo*, 162 DPR 88, 98 (2004).
[28] 31 LPRA § 3375, Art. 1210; *Banco Popular de P.R. v. Sucn. Talavera*, 174 DPR 686, 693 (2008).

la obligación que se establezca.[29] Es menester destacar, que la regla en cuanto a la interpretación contractual es que, si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes o ambigüedades, se estará al sentido literal de sus cláusulas.[30]

En lo que respecta a los contratos de arrendamiento, éstos pueden ser de cosas, obras o servicios.[31] Cuando se pacta un contrato de arrendamiento de una cosa, una de las partes se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y a un precio cierto.[32] Conforme a ello, cuando el arrendamiento se ha hecho por tiempo determinado, finaliza el día prefijado sin necesidad de requerimiento. [33] Dentro de las obligaciones del arrendatario, éste se encuentra obligado a pagar el precio del arrendamiento en los términos convenidos, a pagar los gastos que ocasione la escritura del contrato, asimismo, destinándola al uso pactado.[34]

## C. Cobro de Dinero

Conforme se mencionó previamente, en Puerto Rico rige el principio de la libertad de contratación, en el cual las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que las mismas no sean contrarias a la ley, la moral y el orden público.[35] Sabido es que, a partir del perfeccionamiento de un contrato, las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven del mismo, ello conforme a la buena fe, al uso y a la ley.[36] Por ende, cuando un contrato es legal, válido y carente de vicios del consentimiento, éste constituye la ley entre

---

[29] 31 LPRA § 3391, Art. 1213.
[30] 31 LPRA § 3471, Art. 1233; *CFSE v. Unión de Médicos de la CFSE*, 170 DPR 443, 450 (2007); *Rivera v. Rivera*, 168 DPR 193, 212 (2006); *Trinidad v. Chade*, 153 DPR 280, 289 (2001).
[31] 31 LPRA § 4011, Art. 1432.
[32] 31 LPRA § 4012, Art. 1433.
[33] 31 LPRA § 4062, Art. 1455.
[34] 31 LPRA § 4052, Art. 1445.
[35] 31 LPRA § 3372, Art. 1207.
[36] 31 LPRA § 3375, Art. 1210.

las partes, y debe cumplirse a tenor del mismo.[37] En una demanda de cobro de dinero por incumplimiento contractual, el Artículo 1054 del Código Civil de 1930,[38] sujeta a aquellos que de alguna manera contravengan a sus obligaciones a la indemnización de los daños y perjuicios causados; entiéndase, que bajo este supuesto, todo incumplimiento contractual dará lugar a un resarcimiento. Las acciones *ex contractu* se cimientan en la vulneración de un deber que surge de un contrato, y tienen por objeto que se cumplan las promesas sobre las cuales las partes otorgaron su consentimiento. Así pues, para que proceda la acción de cobro de dinero, debe haber existido un acuerdo de voluntades que genere una obligación producto de ese convenio, creando una expectativa a base a la cual las partes actuaron.[39]

La facultad de resolver las obligaciones se entiende implícita en las recíprocas, en el caso de incumplimiento de uno de los obligados.[40] La parte perjudicada podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos; también podrá pedir la resolución aun después de haber optado por el cumplimiento de éste resultar imposible.[41] Las obligaciones para cuyo cumplimiento se haya señalado un día cierto, sólo serán exigibles cuando ese día llegue, siendo el día cierto aquel que necesariamente ha de venir, aunque se ignore cuando.[42] Por último, la compensación tendrá lugar cuando dos personas sean recíprocamente acreedoras y deudoras una de la otra;[43] y se efectuará cuando las deudas estén vencidas, sean líquidas y exigibles.[44]

---

[37] 31 LPRA § 2994, Art. 1044.
[38] 31 LPRA § 3018, Art. 1054.
[39] *Trinidad v. Chade, supra,* 290.
[40] 31 LPRA § 3052, Art. 1077.
[41] *Id.*
[42] 31 LPRA § 3061, Art. 1078
[43] 31 LPRA § 3221, Art. 1149.
[44] 31 LPRA § 3222, Art. 1150.

### D. La Solidaridad Contractual

Conforme al derogado Código Civil de 1930, "[l]a concurrencia de dos o más acreedores o de dos o más deudores en una sola obligación implica que cada uno de aquéllos tenga derecho a pedir ni cada uno de éstos deba íntegramente las cosas objeto de esta [;] solo habrá lugar a esto cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria".[45]

Sobre este tema, el Alto Foro se ha expresado en torno a que las obligaciones pueden ser clasificadas de acuerdo a los sujetos que componen la relación; a causa de ello, existen obligaciones mancomunadas y solidarias.[46] En las obligaciones mancomunadas, la deuda puede ser dividida, y cada deudor cumplir con su parte de forma independiente; mientras que, en las obligaciones solidarias, cada acreedor tiene derecho a pedir y cada deudor tiene el deber de realizar íntegramente la prestación debida.[47] Por otro lado, la solidaridad no se presume, pues el Artículo 1090 [48] del Código Civil de 1930 establece la mancomunidad como la regla, y la solidaridad como la excepción, surgiendo esta última sólo cuando la obligación expresamente lo determine.[49] Cada uno de los acreedores solidarios puede hacer lo que sea útil a los demás, pero no lo que les sea perjudicial; las acciones ejercitadas contra cualesquiera de los deudores solidarios perjudicaran a estos.[50]

Finalmente, nuestro Tribunal Supremo ha dispuesto que para que exista solidaridad contractual, ésta (i) se debió haber pactado expresamente, o; (ii) debe surgir claramente del contenido del contrato en cuestión, que la relación entre las partes se constituyó

---

[45] 31 LPRA § 3101, Art. 1090.
[46] *Fraguada Bonillla v. Auxilio Mutuo,* 186 DPR 365, 375 (2012).
[47] *Id., citando a* J. Castán Tobeñas, *Derecho Civil Español,* 10ma ed., Madrid, Ed. Reus, 1967, T. III, pág. 107.
[48] 31 LPRA § 3101, Art. 1090.
[49] *Fraguada Bonillla v. Auxilio Mutuo, supra.*
[50] 31 LPRA § 3105, Art. 1094.

con carácter solidario.[51] La solidaridad es una excepción en el régimen de las obligaciones contractuales; cuya obligación no puede ser considerada solidaria, salvo que emane de manera evidente del contrato.[52]

### E. Los Honorarios y el Interés Legal

La Regla 44 de las Reglas de Procedimiento Civil aborda lo relativo a costas, honorarios de abogado e interés legal. La Regla 44.1(a) de las Reglas de Procedimiento Civil estipula que:

> Las costas se concederán a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos en que se incurra necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra.[53]

No obstante, lo anterior, como norma general, se ha determinado que cuando existe un pacto de honorarios, independiente de su naturaleza, aplica el principio de *pacta sunt servanta*.[54] Esto debido a que, según establece el Artículo 1044 del Código Civil de 1930,[55] los contratos tienen fuerza de ley entre las partes, y las disposiciones y obligaciones allí esbozadas deben cumplirse al tenor de estos.

### F. Interés por Mora

El Artículo 1053 del Código Civil de 1930 dispone que un obligado a entregar o hacer una cosa, incurre en mora desde que el acreedor le exija judicial o extrajudicialmente el cumplimiento de su obligación.[56] Cuando dicha obligación consista en el pago de una cantidad de dinero y el deudor incurra en mora, la indemnización

---

[51] *General Accd. Ins. Co. PR v. Ramos*, 148 DPR 523, 537 (1999).
[52] *Id.*
[53] 32 LPRA Ap. V, R. 44.1 (a).
[54] *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 272 (2021); *Blanco Matos v. Colón Mulero*, 200 DPR 398, 413 (2018).
[55] 31 LPRA § 2994, Art. 1044.
[56] 31 LPRA § 3017, Art. 1053.

de daños y perjuicios, no habiendo pacto en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio, en el interés legal.[57] Se considerará como interés legal el que fije la Oficina del Comisionado de Instituciones Financieras, disponiéndose que dichos intereses se computarán de forma simple y no compuesta.[58] Además, el más Alto Foro se ha expresado en torno a la fecha de computación de los intereses por mora, manifestando que éstos deben contarse sobre la suma principal desde la fecha en la que la parte demandada quedó hecha responsable por los mismos.[59]

### G. La Deferencia Judicial y Apreciación de la Prueba

Como es sabido, el ejercicio discrecional de la apreciación de la prueba que ejerce el TPI y las determinaciones que realiza están revestidas de confiabilidad y merecen respeto y deferencia.[60] Por ello, la valoración que lleva a cabo el foro primario se presume correcta, toda vez que es este quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales.[61] Por su parte, un foro apelativo cuenta solamente con "récords mudos e inexpresivos", por lo que se le debe respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos.[62] En ese sentido, y como regla general, no debemos intervenir con las determinaciones que este haya efectuado en virtud de la presunción de corrección de la que gozan.[63]

En vista de lo anterior, nuestro máximo foro ha resuelto que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias

---

[57] 31 LPRA § 3025, Art. 1061.

[58] *Id.*

[59] *Sucesores de Pérez Hnos. v. Sucesores de Abarca*, 33 DPR 105, 108 (1924); *Rivera v. Crescioni*, 77 DPR 47, 55 (1954).

[60] *Argüello v. Argüello*, 155 DPR 62, 79 (2001) citando a *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987); *Trinidad v. Chade, supra,* pág. 289.

[61] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013); *Pueblo v. Santiago*, 176 DPR 133, 148 (2009); *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).

[62] *Rivera Figueroa v. Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 177 DPR 345, 356 (2009); *Trinidad v. Chade, supra*, pág. 291.

[63] *Pueblo v. Pérez Núñez, supra*, pág. 529.

extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[64] En consecuencia, al este tribunal apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[65]

Con relación al error manifiesto, un juzgador incurre en este cuando de un análisis de la totalidad de la evidencia, este Tribunal queda convencido de que las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida.[66] Por tanto, debe existir base suficiente en la prueba admitida que apoye la determinación del foro.[67] De igual forma, se podrá intervenir con la determinación del TPI cuando la referida valoración se aparte de la realidad fáctica o resulte inherentemente imposible o increíble; de lo contrario, el tribunal apelativo deberá abstenerse de intervenir con la apreciación de la prueba hecha por el juzgador de los hechos.[68]

Ahora bien, cabe destacar que, el Tribunal Supremo ha resuelto que, en instancias en que las conclusiones de hecho que

---

[64] *Pueblo v. Calderón Álvarez,* 140 DPR 627, 644 (1996); *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994); *Rivera Pérez v. Cruz Corchado*, 119 DPR 8, 14 (1987); S*ierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

[65] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000); *Pueblo v. Irizarry*, 156 DPR 780, 789 (2002); *Pueblo v. Maisonave*, 129 DPR 49, 62-63 (1991).

[66] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 772 (2013).

[67] *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018); *Pueblo v. Irizarry, supra.*

[68] *Santiago Ortiz v. Real Legacy et al.*, *supra*; *Pueblo v. Arlequín Vélez,* 204 DPR 117, 148 (2020); *Pueblo v. Martínez Landrón*, 202 DPR 409, 424 (2019) citando a *Pueblo v. Maisonave, supra*, pág. 63; *González Hernández v. González Hernández, supra*, pág. 777; *Pueblo v. Viruet Camacho*, 173 DPR 563, 584 (2009); *Pueblo v. Irizarry, supra*; *Pueblo v. Acevedo Estrada, supra*.

realice el TPI estén basadas en prueba pericial o documental, un tribunal revisor estará en la misma posición que el tribunal *a quo*.[69] A esos efectos, aunque no está exenta de la posibilidad de toda revisión, si la actuación del tribunal a *quo* no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del TPI a quien corresponde la dirección del proceso.[70] Los foros apelativos podremos intervenir con tal apreciación luego de realizar una evaluación rigurosa y que, de esta, surjan serias dudas, razonables y fundadas.[71]

Las decisiones discrecionales que toma el TPI no serán revocadas a menos que se demuestre que ese foro abusó de su discreción.[72] Un tribunal de justicia incurre en un abuso de discreción cuando el juez: (i) no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (ii) por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o, (iii) no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, los sopesa y calibra livianamente.[73]

A su vez, es una norma bien establecida de nuestro sistema de justicia que la discreción judicial permea la evaluación de la evidencia presentada en los casos y controversias.[74] No obstante, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal revisor.[75] A esos efectos, conviene destacar que, la intervención del foro

---

[69] *González Hernández v. González Hernández, Id.*
[70] S*ierra v. Tribunal Superior, supra.*
[71] *Pueblo v. Pérez Núñez, supra.*
[72] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013); *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009).
[73] *Pueblo v. Rivera Santiago, supra.*
[74] *González Hernández v. González Hernández, supra*, pág. 776.
[75] *Rivera Pérez v. Cruz Corchado, supra.*

apelativo con la prueba desfilada tiene que estar basada en un análisis independiente y no a base de los hechos que exponen las partes.[76]

### III

Tenemos ante nuestra consideración un recurso de *Apelación* en el cual, en la *Sentencia* se declaró Ha Lugar la acción sobre cobro de dinero presentada por la parte apelada y luego, producto de una reconsideración sufrió unas enmiendas. Dictada la *Sentencia* producto de dicha reconsideración, la parte apelante no estuvo conforme, y acudió ante nos para su revisión. Vemos que, en el *primer* señalamiento de error, la parte apelante nos plantea, en síntesis, que la primera instancia judicial incidió al modificar su *Sentencia*, emitiendo así una sentencia en reconsideración, basándose en que su nuevo dictamen no se sostiene en la prueba presentada en el récord. Por otro lado, en el *segundo* señalamiento de error, la parte apelante también nos plantea que al momento en que el tribunal apelado emitió la sentencia en reconsideración, no dedujo a la deuda reclamada, la suma de $10,000.00, que fueron satisfechos como parte de un acuerdo transaccional durante el litigio. Por último, en el *tercer* señalamiento de error, la parte apelante nos invita a concluir que el foro primario incidió tras haber impuesto honorarios, intereses y haber hecho una determinación de solidaridad sobre un contrato de arrendamiento vencido y objeto de una modificación extintiva.

### *-a-*

Previo a iniciar la discusión de los errores, conviene destacar que, del escrito de *Apelación* presentado por la parte apelante, se desprende su insatisfacción con el giro que tomó el caso al momento en que se atendió la solicitud de reconsideración presentada por la

---

[76] *Hernández v. San Lorenzo Const.*, 153 DPR 405, 425 (2001).

parte apelada. En el presente caso, no está en controversia que los procesos judiciales en este caso han estado presididos por al menos dos (2) jueces distintos. El *primero,*[77] fue quien presidió el juicio en su fondo, mientras que la *segunda,*[78] suscribió la Sentencia y luego evaluó la solicitud de reconsideración presentada por la parte apelante. En síntesis, la parte apelante nos plantea que el *primer* juez fue quien presidió el juicio, y tuvo ante sí la prueba, no así la *segunda* juez. En este punto, hay que señalar que nuestras reglas procesales proveen para las sustituciones de jueces, y disponen lo siguiente:

> Si por razón de muerte, enfermedad, retiro o por cualquier otra razón, un juez o una jueza no puede continuar entendiendo un asunto, otro juez o jueza podrá actuar en su lugar, pero si de haber comenzado o concluido el juicio, éste o ésta se convence de que no puede desempeñar dichos deberes sin la celebración de un nuevo juicio sobre todos o parte de los hechos, o sin oír nuevamente a algún testigo, podrá tomar las medidas que sean necesarias para resolver el pleito.[79]

Visto lo cual, pudimos constatar del expediente judicial ante nuestra consideración que, en efecto, en el presente caso, el *primer* juez fue quien presidió el juicio en su fondo. Sin embargo, nótese que la *segunda* juez tuvo participación en el caso al menos desde el momento en que se dictó la *Sentencia* emitida el 25 de noviembre de 2019, reducida a escrito el 8 de septiembre de 2022.[80] Conviene señalar en este punto, dos detalles. El *primero* es que es la firma electrónica,[81] de la *segunda* juez es la que aparece en dicha

---

[77] Hon. Reinaldo O. Catinchi Padilla.
[78] Hon. Myrna E. Ayala Díaz.
[79] 32 LPRA Ap. V, R. 64.
[80] Apéndice del apelante, a la pág. 187. Véase que previo a la firma electrónica de la Hon. Myrna E. Ayala Díaz, aparece el nombre del Hon. Reinaldo O. Catinchi Padilla, Juez Superior, mediante un "POR", pero no contiene firma electrónica alguna.
[81] Véase, Directrices Administrativas para la *Presentación y Notificación Electrónica de Documentos Mediante el Sistema Unificado de Manejo y Administración de Casos,* aprobadas mediante la OAJP-2013-173 del 10 de enero de 2014, según enmendadas por la OAJP-2017-14 del 2 de marzo de 2017 y la OAJP-2021-088 del 13 de diciembre de 2021. La sección IV (8) de las precitadas directrices dispone que "[l]a **firma electrónica** será usada por los jueces, las juezas, [...] y tendrá la misma validez legal que la firma manuscrita o de puño y letra".

*Sentencia*, entiéndase "f/", mientras que el *segundo*, es que los autos revelan que dicha *Sentencia* se encuentra huérfana de determinaciones de hechos y conclusiones de derecho. Más bien, a lo único que se hace referencia es a lo informado por uno de los letrados y no hace referencia a la prueba desfilada. Por otro lado, atendida la solicitud de reconsideración presentada por la parte apelada, la *segunda* juez suscribió también con su firma electrónica la *Sentencia* emitida posteriormente, por vía de reconsideración.[82] Puntualizamos que, en ocasión de la reconsideración, el TPI emitió una Sentencia fundamentada.

Con este preámbulo, merece destacar que, como tribunal revisor, reconocemos la importancia que tiene una moción de reconsideración en el proceso apelativo. Lo anterior, puesto a que es el mecanismo dispuesto por nuestro ordenamiento procesal para que un tribunal pueda modificar, corregir o hasta dejar sin efecto lo actuado. Ahora bien, sin intención de ser reiterativos, pero por su importancia, es claro que no existe controversia de que hubo dos jueces interviniendo en el caso. No obstante, y según hemos expuesto, también es claro que nuestro ordenamiento procesal provee para lo anterior, lo cual requiere un ejercicio discrecional del juez o jueza sustituta en la toma de medidas que sean necesarias para resolver el pleito. La precitada regla no obliga al nuevo juez o jueza a actuar de cierta forma, sino que, según hemos mencionado, solo requiere que se tomen las medidas necesarias para resolver el pleito.

"El efectivo funcionamiento de nuestro sistema judicial y la rápida disposición de los asuntos litigiosos requieren que los jueces

---

Por otro lado, precisa aclarar, además, que la Sección X en sus incisos (1) y (4) explican, específicamente, que la firma electrónica debe ser de **"f/"**, seguido por el nombre completo. Además, la Sección X en su inciso (6) dispone que "[c]ualquier dictamen o pronunciamiento judicial **firmado electrónicamente** por un juez o una jueza tendrá la misma validez legal que uno firmado en manuscrito o de puño y letra".

[82] Apéndice del apelante, a la pág. 204.

de instancia tengan gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales".[83] Por consiguiente, como regla general, los foros apelativos no intervendrán en la discreción de los foros primarios a no ser que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción.[84]

Visto lo actuado por la *segunda* juez, es forzoso concluir que esta quedó convencida de que podía atender el asunto, lo anterior dado a que el expediente judicial se encuentra huérfano de elementos que nos lleven a razonar que la *segunda* juez no contara con los elementos para actuar conforme a lo aquí expresado.

*-b-*

En cuanto al *primer* y *segundo* señalamiento de error, tras considerar que se encuentran íntimamente relacionados, procederemos a discutirlos en conjunto. Por un lado, el *primer* error esgrimido por la parte apelante versa sobre la apreciación de la prueba del foro primario durante el juicio en su fondo y que provocó que razonara que la *Sentencia* debía ser modificada. Por otro lado, en el *segundo* error, la parte apelante razonó que el foro primario incidió al no restarle a la cuantía impuesta como adeudada en reconsideración el pago de $10,000.00 previamente realizado.

En consecuencia, al este tribunal apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad; (ii) incurrió en un

---

[83] *Banco Popular de Puerto Rico v. Gómez Alayon*, 2023 TSPR 145.
[84] *Id.*

craso abuso de discreción; o, (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[85]

De igual forma, se podrá intervenir con la determinación del TPI cuando la referida valoración se aparte de la realidad fáctica o resulte inherentemente imposible o increíble; de lo contrario, el tribunal apelativo deberá abstenerse de intervenir con la apreciación de la prueba hecha por el juzgador de los hechos.[86] Este no es el caso. Luego de evaluar la totalidad del expediente ante nuestra consideración, colegimos que no existe razón para sustituir el criterio del foro primario por el nuestro.

Según expresamos en la relación de hechos, aun cuando un primer juez fue quien celebró el juicio, fue la segunda juez la que emitió la *Sentencia*. Este dato medular puede constatarse de los autos del SUMAC. Puntualizamos que, previo a que la *Sentencia* fuese reconsiderada, y luego de evaluar la misma, es claro que su contenido es uno exiguo y carente de determinaciones de hechos. Más bien, en la misma, el TPI se limitó a expresar un comentario realizado por uno de los letrados durante el juicio y su dictamen.

Ahora bien, en la *Sentencia* dictada por vía de reconsideración y conforme se desprende de las determinaciones de hecho allí emitidas, así como luego de estudiar minuciosamente el expediente en su totalidad, incluyendo la TPO, vemos que entre las partes se suscribió un contrato de arrendamiento para un local comercial. Dicho contrato fue marcado como Exhibit 1 por estipulación y aquilatado por el foro primario. Conforme a los términos, el contrato dio inicio el 1 de junio de 2010, por espacio de cinco (5) años y venció

---

[85] *González Hernández v. González Hernández, supra,* pág. 776; *Ramírez Ferrer v. Conagra Foods PR, supra,* pág. 811; *Rivera y otros v. Bco. Popular, supra,* pág. 155; *Pueblo v. Irizarry, supra,* pág. 789; *Pueblo v. Maisonave, supra,* págs. 62-63.
[86] *Santiago Ortiz v. Real Legacy et al., supra; Pueblo v. Arlequín Vélez, supra,* pág. 148; *Pueblo v. Martínez Landrón, supra,* pág. 424, citando a *Pueblo v. Maisonave, Id.,* 63; *González Hernández v. González Hernández, Id.,* 777; *Pueblo v. Viruet Camacho, supra,* pág. 584; *Pueblo v. Irizarry, supra; Pueblo v. Acevedo Estrada, supra.*

el 31 de mayo de 2015. Según los términos del contrato, a partir del 31 de mayo de 2015, este continuó con una vigencia automática por periodos de mes a mes hasta el 1 de agosto de 2018, fecha en que la parte apelante desalojó la propiedad en cuestión.[87] Del contrato se desprende, además, que el canon de arrendamiento mensual era de $1,793.85. Conforme se desprende de la TPO, aun cuando en su turno de prueba la parte apelante intentó demostrar que hubo unos acuerdos para modificar, con el fin de reducir el canon mensual de arrendamiento, lo cierto es que, un análisis integral de la prueba documental y testifical demuestra lo contrario.

Es preciso destacar que la regla en cuanto a la interpretación contractual es que, si los términos del contrato son claros y no dejan duda sobre la intención de los contratantes o ambigüedades, se estará al sentido literal de sus cláusulas.[88] Los propios términos y condiciones generales del contrato, según establecidos en su Artículo C, inciso13, disponen lo siguiente: "[n]o modification or amendment of this Lease Agreement or of any of its conditions or provisions shall be binding upon **Lessor** unless in writing signed by both **Lessor** and **Lessee**".[89] Conforme a ello, y según ha sido previamente señalado, basta esencialmente en la lectura del contrato para concluir que, bajo esta disposición, quedó evidenciada la intención de las partes a que ninguna modificación o enmienda de este Contrato de Arrendamiento o de cualesquiera de sus condiciones sería vinculante para el arrendador, a menos que fuesen por escrito y firmada por ambas partes.

Con todo, tampoco cabe hablar de pago en finiquito ni tácita reconducción como plantea la parte apelante. Lo anterior, puesto a

---

[87] Apéndice de la parte apelante, a las págs. 20 y 200.
[88] 31 LPRA § 3471, Art. 1233; *CFSE v. Unión de Médicos de la CFSE, supra*, pág. 450; *Rivera v. Rivera, supra*, pág. 212; *Trinidad v. Chade, supra,* pág. 289.
[89] Véase Exhibit 1 por Estipulación – Contrato de Arrendamiento, a la pág. 5.

que, del propio contrato de arrendamiento, en su Artículo C, inciso 11, se desprende lo siguiente:

> [t]he failure or neglect of Lessor to enforce any provision of this Lease Agreement shall not be deemed a waiver of Lessor's rights. Any waiver must be in writing and signed by Lessor. Lessor's acceptance of less than the total amount due from Lessee at any time shall not be deemed a waiver of Lessor's right to receive the full amount due.[90]

Resulta evidente que se trata de una cláusula comprendida en el contrato pactado entre las partes, la cual posee un lenguaje claro y libre de vaguedad, indicando que cualquier incumplimiento hacia alguna disposición dentro del mismo, no se considerará una renuncia a los derechos del arrendador; sino que cualquier renuncia deberá haberse realizado por escrito y firmada por el arrendador. Asimismo, expone que la aceptación por parte del arrendador por un monto menor al total adeudado por el arrendatario, en cualquier momento, no se considerará una renuncia al derecho del arrendador a recibir el monto total adeudado. Por tal razón, no requiere de ulterior interpretación del Tribunal para auscultar la intención de las partes, ya que, de la totalidad del expediente ante nuestra consideración, no se desprende que hayan materializado las alegadas enmiendas conforme a los términos del contrato. De hecho, tanto de las determinaciones de hecho del foro primario, específicamente, la número 14,[91] así como de la TPO, se desprende que, en el turno del contrainterrogatorio, la señora Piñero Lugo admitió no tener ninguna enmienda o modificación al contrato por escrito.[92]

Dicho lo anterior, pudimos constatar que el canon mensual de arrendamiento siempre fue el pactado, entiéndase, $1,793.85, independientemente de que, en algunos meses, la parte apelada

---

[90] Véase Exhibit 1 por Estipulación – Contrato de Arrendamiento, a la pág. 5.
[91] Apéndice de la parte apelante, a la pág. 202.
[92] En la TPO, a la pág. 126, líneas 2-7.

hubiese aceptado pagos por sumas menores. Señalamos nuevamente que los foros apelativos podremos intervenir con la apreciación de la prueba luego de realizar una evaluación rigurosa, y que, de ésta, surjan serias dudas, razonables y fundadas.[93] No obstante, las decisiones discrecionales que toma el TPI no serán revocadas a menos que se demuestre que ese foro abusó de su discreción.[94] Habiéndose realizado una evaluación rigurosa de la prueba presentada por las partes, sostenemos que el TPI no abusó en su discreción, por lo que no atisbamos ninguna razón para intervenir con las determinaciones de hechos emitidas.

Por otro lado, adentrándonos en el segundo error esgrimido, del Exhibit 1 de la parte apelada, estado de cuenta intitulado: "Praderas de Navarro Shopping Center Inc. Transaction List by Customer", se desprenden las transacciones realizadas en relación con la propiedad objeto de arrendamiento. En lo pertinente, se desprende que la parte apelada adjudicó los $10,000.00 que fueron pagados como parte del acuerdo transaccional que surge de la *Sentencia Parcial* emitida en este caso, quedando un balance de $37,938.24, cantidad que coincide con la impuesta en la *Sentencia* del foro primario. De hecho, de la prueba desfilada y que surge de la TPO, se desprende que "[s]ale de total facturado, que son $113,216.79 versus los pagos recibidos correspondiente a eso, que son $75,278.55, quedando un balance pendiente de $37,938.24".[95] En otras palabras, tras analizar la determinación de hecho número 16 emitida por el TPI, la prueba documental admitida, en específico, el Exhibit 1 de la parte apelada, *vis a vis* la TPO, forzoso es concluir que no existía ninguna necesidad de deducir los $10,000.00 de la

---

[93] *Pueblo v. Pérez Núñez, supra,* pág. 514.
[94] *SLG Zapata-Rivera v. J.F. Montalvo, supra,* pág. 434; *Pueblo v. Rivera Santiago, supra,* pág. 580.
[95] En la TPO, a la pág. 46, líneas 18-21.

cuantía impuesta por el foro primario en la *Sentencia* en reconsideración, porque en efecto, ya se le había restado.

Por último, la parte apelante razonó que el foro primario cometió un error manifiesto al reconsiderar su sentencia. Con relación al error manifiesto, un juzgador incurre en éste cuando de un análisis de la totalidad de la evidencia, este Tribunal queda convencido de que las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida.[96] Por tanto, debe existir base suficiente en la prueba admitida que apoye la determinación del foro.[97] Juzgamos, además, que no cabe hablar de un error manifiesto sobre lo actuado por la primera instancia judicial cuando determinó reconsiderar la sentencia emitida, lo anterior, independientemente de que hubiese sido un juez distinto al que presidió el juicio. Razonamos que el foro primario no abusó de su discreción al actuar como tal. Es por todo lo anterior, que disponemos que el *primer* y *segundo* error no fueron cometidos.

*-c-*

Por otro lado, en cuanto al *tercer* y último error esgrimido por la parte apelante, sostiene que incidió el TPI al haber impuesto honorarios e intereses, así como haber emitido una determinación de solidaridad sobre sobre un contrato de arrendamiento vencido y objeto de una modificación extintiva. No nos convence.

En *primer* lugar, y a base de la discusión que antecede, lo alegado por la parte apelante en cuanto a una modificación extintiva, es un planteamiento que no tiene lugar, en este caso. Ahora bien, del expediente judicial se desprende que tanto los honorarios impuestos por el foro primario, así como los intereses, fueron previamente pactados en el contrato entre las partes. Lo

---

[96] *Dávila Nieves v. Meléndez Marín, supra,* pág. 782.
[97] *Pueblo v. Toro Martínez, supra,* pág. 859; *Pueblo v. Irizarry, supra,* pág. 789.

anterior se desprende del contrato, el cual establecía en su Artículo C, inciso (4)(d),[98] que el arrendatario pagaría al arrendador todos los montos que adeudase, ya sea por daños a las instalaciones o al centro comercial, incluyendo, pero no limitándose a cantidades de las cuales el arrendatario fuese responsable, o en las cuales este hubiese acordado indemnizar en virtud de cualquier disposición de este referido contrato de arrendamiento, que pudieran vencerse y no pagarse; así como todos los costos y gastos, incluyendo costos judiciales y honorarios de abogados incurridos por el arrendador al hacer valer sus remedios y derechos en virtud del contrato. Adicionalmente, cabe resaltar que el Artículo C, inciso (4)(c)[99] dispuso que del arrendatario no efectuar algún pago al arrendador a su vencimiento, este debía pagar intereses sobre cualquier monto vencido equivalente a cuatro (4) puntos por encima de la tasa preferencial, sin exceder la tasa máxima permitida por la ley en Puerto Rico, a partir de la fecha que el monto vence, hasta que sea pagada o satisfecha.

Recordemos que, conforme a nuestro ordenamiento, a partir del perfeccionamiento de un contrato, las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven del mismo, ello conforme a la buena fe, al uso y a la ley.[100] Por ende, cuando un contrato es legal, válido y carente de vicios del consentimiento, éste constituye la ley entre las partes, y debe cumplirse a tenor de este.[101]

En *segundo* lugar, la parte apelante nos plantea que fue un error del tribunal *a quo,* el haber emitido una determinación de solidaridad hacia los apelantes. No le asiste la razón. Veamos. Conforme a nuestro ordenamiento jurídico, en las obligaciones

---

[98] Véase Exhibit 1 por Estipulación – Contrato de Arrendamiento, a la pág. 4.
[99] *Id.*
[100] 31 LPRA § 3375, Art. 1210.
[101] 31 LPRA § 2994, Art. 1044.

solidarias, cada acreedor tiene derecho a pedir, y cada deudor tiene el deber de realizar íntegramente la prestación debida.[102] La solidaridad no se presume, puesto que solo habrá lugar a ella cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria.[103]. Nuestro Alto Foro ha dispuesto que para que exista solidaridad contractual, ésta (i) se debió haber pactado expresamente, o; (ii) debe surgir claramente del contenido del contrato en cuestión, que la relación entre las partes se constituyó con carácter solidario.[104]

En el presente caso, coincidimos con la apreciación del foro apelado cuando arribó a la conclusión de que, al momento en que se suscribió el contrato, el señor Rodríguez Rivera y la señora Piñero Lugo lo hicieron en calidad de garantizadores del cumplimiento de todas las obligaciones contractuales, incluso las de un procedimiento para fiscalizar su cumplimiento, entiéndase, el caso de autos.[105] Abona a lo anterior que del propio contrato de arrendamiento, en su Artículo A, inciso 4, se desprende que la renta básica del alquiler del local y otros cargos, serían por un monto fijo de $1,793.85 durante el plazo del contrato de arrendamiento, pagaderos el primer día de cada mes, los cuales incluyen cargos de mantenimiento a las áreas comunes, junto a todos los servicios públicos e impuestos aplicables, contrato que luego se renovó mes a mes.

En fin, juzgamos que, en ausencia de pasión, prejuicio y parcialidad o error manifiesto en la apreciación de la prueba, tal y como hemos visto en el caso ante nuestra consideración, no

---

[102] *Fraguada Bonillla v. Auxilio Mutuo, supra,* pág. 375, (*citando a* J. Castán Tobeñas, Derecho Civil Español, 10ma ed., Madrid, Ed. Reus, 1967, T. III, pág. 107.)
[103] *Id.*
[104] *General Accd. Ins. Co. PR v. Ramos, supra,* pág. 537.
[105] Apéndice de la parte apelante, a la pág. 203.

corresponde intervenir con la sentencia objeto de revisión. Es por todo lo anterior, que corresponde confirmar la *Sentencia* apelada.

**IV**

Por los fundamentos que anteceden, *se confirma* la Sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones